PAUL HEIGL, ADMINISTRATOR (ESTATE OF JASON
HEIGL), ET AL. *v.* BOARD OF EDUCATION OF
THE TOWN OF NEW CANAAN
(14006)

SHEA, GLASS, COVELLO, HULL and BORDEN, Js.

Argued January 18—decision released March 19, 1991

*Richard A. Silver,* with whom was *Catherine C. Ziehl,* for the appellants-appellees (plaintiffs).

*Michael T. Bologna,* for the appellee-appellant (defendant).

COVELLO, J. This appeal presents the issue of whether a town board of education, in adopting a so-called open campus policy, is insulated from tort liability by reason of the doctrine of governmental immunity. We conclude that this is so and affirm the judgment of the trial court.

The plaintiffs'[1] complaint alleged, inter alia, that on September 23, 1986, Jason Heigl, a tenth grade student at New Canaan High School, left the school grounds, pursuant to the defendant board of education's open campus policy,[2] in a vehicle operated by another student. The vehicle subsequently was involved in a one-car accident. On September 30, 1986, Jason Heigl died of injuries sustained as a consequence of the accident.

The plaintiffs alleged further that the defendant failed to exercise due care in supervising the town's high school students. The trial court, *Lewis, J.,* granted the defendant's motion to strike the complaint, concluding that a board of education is an agent of the state

---

[1] The plaintiffs Paul Heigl and Nancy Heigl are the administrators of the estate of Jason Heigl.

[2] The plaintiffs' complaint describes the board's open campus policy as a policy that "permitted tenth, eleventh and twelfth graders from New Canaan High School to leave campus for personal or school business during unscheduled time without requiring permission from school officials or parents and without supervision of off-campus activities."

and, therefore, is immune from tort liability by reason of the doctrine of sovereign immunity. The plaintiffs thereafter filed an amended complaint alleging that the board of education had failed to supervise properly the town's high school students and had exceeded its statutory authority by implementing an open campus policy that allowed students to leave the high school during unscheduled times without permission. The trial court again granted the defendant's motion to strike the amended complaint and, upon the plaintiffs' failure to plead over, rendered judgment for the defendant.[3] See Practice Book § 157. The plaintiffs appealed to the Appellate Court. We thereafter transferred the matter to ourselves pursuant to Practice Book § 4023.

The two issues presented on appeal are whether the defendant is immune from tort liability because either: (1) the town board of education is an agent of the state and is protected by the doctrine of sovereign immunity; or (2) the town board of education, in adopting an open campus policy, is engaged in a discretionary activity and is protected by the doctrine of governmental immunity. We conclude that the defendant was engaged in a legislative function requiring the exercise of independent judgment or discretion in establishing the open campus policy, and therefore is insulated from tort liability under the doctrine of governmental immunity. We need not, therefore, decide the first issue presented.

A town board of education can be an agent of the state for some purposes and an agent of the munici-

---

[3] The defendant filed a cross appeal claiming that the plaintiffs' amended complaint was substantially similar to their original complaint and that therefore the trial court improperly sustained the plaintiffs' objection to their request to revise the amended complaint. See *Royce* v. *Westport,* 183 Conn. 177, 180–82, 439 A.2d 296 (1981); *Good Humor Corporation* v. *Ricciuti,* 160 Conn. 133, 136–37, 273 A.2d 886 (1970); 1 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1982 Sup.) § 113 (d). Because we decide this case on the issue of governmental immunity, we do not address the merits of the cross appeal.

pality for others. See, e.g., *Cahill* v. *Board of Education,* 187 Conn. 94, 101, 444 A.2d 907 (1982). A town board of education thus potentially enjoys immunity under two different theories of immunity for acts carried out within its governmental capacity. For example, "[w]e have long recognized the common-law principle [*of sovereign immunity*] that the state cannot be sued without its consent." (Emphasis added.) *Sentner* v. *Board of Trustees,* 184 Conn. 339, 342, 439 A.2d 1033 (1981). Alternatively, "[a]t common law, Connecticut municipalities enjoy *governmental immunity,* in certain circumstances, from liability for their tortious acts." (Emphasis added.) *Ryszkiewicz* v. *New Britain,* 193 Conn. 589, 593, 479 A.2d 793 (1984); see *Evon* v. *Andrews,* 211 Conn. 501, 505, 559 A.2d 1131 (1989).

The plaintiffs argue that the doctrine of sovereign immunity does not apply in this case because the board of education was acting as an agent of the town, and not the state, in establishing the open campus policy. The plaintiffs claim further that the board is not protected by the doctrine of governmental immunity because its decision to establish the open campus policy was a ministerial, not a discretionary, act and, as a result, is excepted from the protection afforded by the doctrine. See *Rupp* v. *Bryant,* 417 So. 2d 658, 665 (Fla. 1982).

A municipality's potential liability for its tortious acts is limited by the common law principle of governmental immunity. *Ryszkiewicz* v. *New Britain,* 193 Conn. 589, 593, 479 A.2d 793 (1984). Governmental immunity, however, is not a blanket protection for all official acts. For example, " '[a] municipality is immune from liability for the performance of governmental acts as distinguished from ministerial acts. . . .' " (Citations

omitted.) *Gordon* v. *Bridgeport Housing Authority,* 208 Conn. 161, 167, 544 A.2d 1185 (1988).[4]

"This court has . . . discussed extensively the difference between a ministerial and a discretionary act." *Gordon* v. *Bridgeport Housing Authority,* supra, 167. "Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . On the other hand, ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." (Citations omitted.) *Gauvin* v. *New Haven,* 187 Conn. 180, 184, 445 A.2d 1 (1982).

The plaintiffs allege that the defendant board failed in the exercise of a "ministerial duty" and thus is not protected by governmental immunity. Specifically, the plaintiffs claim that the death of the decedent was "caused by the negligence of the New Canaan Board of Education . . . *by promulgating a policy* which permitted students to leave campus during unscheduled times without . . . supervision." (Emphasis added.)

The act of promulgating a policy, however, is a discretionary activity. A policy, by definition, is "a definite course or method of action selected from among alternatives . . . to guide and determine present and

---

[4] We note that governmental immunity is subject to other qualifications not germane to this case. For example, the question of the extent of immunity granted a municipal employee as opposed to a municipal agency is not before us. See *Evon* v. *Andrews,* 211 Conn. 501, 505, 559 A.2d 1131 (1989). In addition, a municipality can be liable for even discretionary acts if they were committed maliciously or intentionally. See *Gordon* v. *Bridgeport Housing Authority,* 208 Conn. 161, 167, 544 A.2d 1185 (1988). In addition, we do not address the various inapplicable exceptions to the doctrine of governmental immunity established by statute. See General Statutes § 13-149; see also 4 Restatement (Second), Torts § 895C, comment (e); note, "The Official Responsibility Rule and its Implications for Municipal Liability in Connecticut: *Shore* v. *Town of Stonington,* "15 Conn. L. Rev. 641, 644–45 (1983).

future decisions." Webster's Ninth New Collegiate Dictionary. The fact that a policy is enacted "to guide . . . future decisions" indicates that the board was engaged in a legislative, and therefore discretionary, activity. See also *Spitzer* v. *Waterbury,* 113 Conn. 84, 87, 154 A. 157 (1931). Furthermore, the fact that the board chose to select an open campus policy from among various alternatives indicates that the exercise of judgment was involved.[5]

That the board's actions were not ministerial is supported by the fact that General Statutes § 10-221 (a) and (b)[6] grant local boards of education certain powers including, inter alia, the authority to "implement written policies concerning . . . attendance . . . ." By its very terms, therefore, § 10-221 permits local boards significant latitude in selecting an appropriate student attendance policy. As a result, therefore, it cannot be

---

[5] One reason for granting a local government immunity from tort liability is that, as in this case, a civil trial may be an inappropriate forum for testing the wisdom of legislative actions. This is particularly true if there is no "readily ascertainable standard by which the action of the government servant may be measured. . . ." *Cady* v. *Plymouth-Carver Regional School District,* 17 Mass. App. 211, 215, 457 N.E.2d 294 (1983), review denied, 391 Mass. 1103, 461 N.E.2d 1219 (1984). Thus, "[t]he policy behind the exception is to avoid allowing tort actions to be used as a monkey wrench in the machinery of government decision making." Id.

[6] General Statutes (Rev. to 1985) § 10-221 provides in part: "BOARD OF EDUCATION TO PRESCRIBE RULES. (a) Boards of education shall prescribe rules for the management, studies, classification and discipline of the public schools and, subject to the control of the state board of education, the textbooks to be used; shall make rules for the control, within their respective jurisdictions, of school library media centers and approve the selection of books and other educational media therefor, and shall approve plans for public school buildings and superintend any high or graded school in the manner specified in this title.

"(b) Not later than July 1, 1985, each local and regional board of education shall develop, adopt and implement written policies concerning homework, attendance, promotion and retention. The state department of education shall make available model policies and guidelines to assist local and regional boards of education in meeting the responsibilities enumerated in this subsection. . . ."

said that the board was acting "in a prescribed manner without the exercise of judgment" as would be true of a ministerial action.

The plaintiffs claim, however, that the defendant had a duty, implicit in General Statutes §§ 10-240, 10-184 and 10-15,[7] to supervise the students during the hours for school attendance and, therefore, could not allow

---

[7] General Statutes (Rev. to 1985) § 10-15 provides: "TOWNS TO MAINTAIN SCHOOLS. Public schools including kindergartens shall be maintained in each town for a least one hundred eighty days of actual school sessions during each year. When public school sessions are cancelled for reasons of inclement weather or otherwise, the rescheduled sessions shall not be held on Saturday or Sunday. The state board of education may authorize the shortening of any school year on account of an unavoidable emergency and may authorize implementation of scheduling of school sessions to permit full year use of facilities which may not offer each child one hundred eighty days of school sessions within a given school year, but which assures an opportunity for each child to average a minimum of one hundred eighty days of school sessions per year during thirteen years of educational opportunity in the elementary and secondary schools. Notwithstanding the provisions of this section and section 10-6, the state board of education may, upon application by a local or regional board of education, approve for any single school year, in whole or in part, a plan to implement alternative scheduling of school sessions which assures at least four hundred fifty hours of actual school work for nursery schools and kindergartens and at least nine hundred hours of actual school work for grades one to twelve, inclusive."

General Statutes (Rev. to 1985) § 10-184 provides in part: "DUTIES OF PARENTS. All parents and those who have the care of children shall bring them up in some lawful and honest employment and instruct them or cause them to be instructed in reading, writing, spelling, English grammar, geography, arithmetic and United States history and in citizenship, including a study of the town, state and federal governments. Each parent or other person having control of a child seven years of age and over and under sixteen years of age shall cause such child to attend a public day school regularly during the hours and terms the public school in the district wherein such child resides is in session, or while the school is in session in which provision for the instruction of such child is made according to law, unless the parent or person having control of such child is able to show that the child is elsewhere receiving equivalent instruction in the studies taught in the public schools . . . ."

General Statutes § 10-240 provides: "CONTROL OF SCHOOLS. Each town shall through its board of education maintain the control of all the public schools within its limits and for this purpose shall be a school district and shall have all the powers and duties of school districts, except so far as such powers and duties are inconsistent with the provisions of this chapter."

them to leave the school without supervision. The plaintiffs argue that the "duty to supervise high school students is generally ministerial in nature" and therefore the board is not protected by governmental immunity.

Neither the General Statutes nor our decisional law has ever stated that a board of education has a specific duty to supervise high school students. Even if such a duty exists, actions pursuant to such a duty are discretionary if they " 'are performed wholly for the direct benefit of the public . . . .' " *Gordon* v. *Bridgeport Housing Authority,* 208 Conn. 161, 167–68, 544 A.2d 1185 (1988).[8] "If the duty imposed . . . by the statute is of such a nature that the performance of it will affect an individual in a manner different in kind from the way it affects the public at large, the statute is one which imposes . . . a duty to the individual . . . ." (Citations omitted.) *Leger* v. *Kelley,* 142 Conn. 585, 590–91, 116 A.2d 429 (1955). If, on the other hand, "no one individual is affected . . . in a manner different from other members of the general public . . . [t]he duty imposed [is] . . . public . . . ." Id., 591. Pursuant to its authority under the General Statutes, the board of education in this case established a policy that affected every member of the student population of New Canaan High School in the same manner. There is no suggestion that the decedent was singled out by the policy. Thus, the board was acting for the public benefit and was not discharging an affirmative duty toward an identifiable individual student. As a result, any action by the board in this regard was discretionary and therefore protected from liability.

We conclude that the board of education was engaged in a discretionary activity in establishing the open campus policy. As a result, the board is immune from tort liability by reason of the doctrine of governmental

---

[8] See also 57 Am. Jur. 2d, Municipal, County, School, and State Tort Liability, § 96.

immunity. The trial court therefore correctly determined that the complaint failed to state a cause of action.

The judgment is affirmed.

In this opinion the other justices concurred.