**Richard J. HUGHES**

v.

**CITY OF HARTFORD, et al.**

**No. 3:98CV1961 (JBA).**

United States District Court,
D. Connecticut.

March 15, 2000.

David K. Jaffe, Spinella & Jaffe, Hartford, CT, for Richard J. Hughes, plaintiff.

James J. Szerejko, Brian P. Leaming, Halloran & Sage, Hartford, CT, for City of Hartford, Chief of Police, Joseph Croughwell, Brian J., Police Officer, John Polletta, defendants.

### RULING ON DEFENDANTS' MOTION TO DISMISS [DOC. # 28]

ARTERTON, District Judge.

## I. INTRODUCTION

Plaintiff's second amended complaint alleges violations of 42 U.S.C. § 1983, Conn. Gen.Stat. § 52–557n, § 7–465[1] and state common-law, by members of the Hartford Police Department. Defendants City of Hartford, Chief Joseph Croughwell, Officer Brian Foley, and Officer David Polletta move pursuant to Fed.R.Civ.P. 12(b)(6) to dismiss the third, fifth, sixth, seventh, and eighth counts of plaintiff's complaint. For the reasons set forth below, defendants' motion is granted in part and denied in part.

## II. FACTUAL BACKGROUND

Plaintiff claims that the Defendant police officers subjected him to false arrest, malicious prosecution, false imprisonment, defamation, and emotional distress, resulting from, among other things, the use of a falsified arrest warrant. Plaintiff claims that as a result of these actions, he was wrongfully incarcerated for nearly two years until he was acquitted on April 6, 1998. In addition to the individual police officers, plaintiff has named the City of Hartford and Joseph Croughwell, Chief of the Hartford Police Department, as defendants. Apart from the Fourteenth Amendment claim which plaintiff has withdrawn,[2] the counts against the latter two defendants are the subject of Defendants' Motion to Dismiss.

## III. STANDARD

When considering a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the court must accept all factual allegations in a complaint as true and draw inferences in the light most favorable to the plaintiff. *See Leeds v. Meltz,* 85 F.3d 51, 53 (2nd Cir.1996). Such motion should not be granted unless it is beyond doubt that the

---

1. In his complaint plaintiff also cites Conn. Gen.Stat. § 7–101, which requires towns in Connecticut to adopt a town seal. The Court presumes that the plaintiff intended to reference Conn.Gen.Stat. § 7–101a, the statutory provision requiring municipalities to indemnify elected or appointed officers. None of the counts expressly reference this statute, nor has the defendant sought to have any claims under this statute dismissed.

2. As noted by defendant, the Supreme Court has definitively held that the sole source of constitutional protection for claims involving unreasonable search and seizure or excessive force in the course of an arrest is the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Recognizing this, plaintiff has withdrawn his claims under the Fourteenth Amendment. Pl. Mem. in Opp. at 4.

plaintiff can prove no set of facts in support of the claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## IV. DISCUSSION

### A. *Municipal Liability Under 42 U.S.C. § 1983*[3]

■ In *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the Supreme Court held that "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." 436 U.S. at 691, 98 S.Ct. 2018. Rather, a plaintiff must show an official policy or custom that caused the plaintiff to be subjected to the denial of a constitutional right. *See id.* at 693, 98 S.Ct. 2018; *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir.1995). The *Monell* analysis applies to government officials sued in their official capacities as well. *See Monell,* 436 U.S. at 690, n. 3, 98 S.Ct. 2018. Therefore, the sufficiency of count three (naming Chief Croughwell) and count five (naming the City of Hartford) of Plaintiff's complaint may be analyzed together.[3] *See id.*

Defendants argue that plaintiff's complaint is inadequate as a matter of law and must be dismissed because it alleges § 1983 liability of Defendants under a theory of respondeat superior. However, plaintiff's complaint alleges, *inter alia,* failure or refusal to promulgate appropriate regulations and policies regarding investigations, arrests, narcotics investigations and arrests; to adequately investigate and discipline wrongful conduct related to improper arrests; to adequately hire, screen and retain officers; and to adequately train officers in narcotics investigations, arrests, and "controlled substance buys." Therefore, it is clear from the face of the complaint that plaintiff is not attempting

to plead § 1983 liability under a theory of respondeat superior.

Even though on the face of his complaint plaintiff is not attempting to use respondeat superior as a basis for municipal liability, the defendants' characterization of his claims against the City of Hartford and Chief Croughwell as such is understandable. Plaintiff's complaint recites a number of failures on the part of the municipality, including the failure to adequately promulgate guidelines, and to train, hire, screen, investigate and supervise police officers. But with one exception, plaintiff make no factual assertions, other than factual allegations detailing the conduct of the two police officers. The complaint is, for the most part, devoid of any causal nexus between the conduct of the individual police officers and the policy or custom of the Hartford police department. In essence, plaintiff's allegations against the municipal defendants and officials amount to *post hoc* theorization that because individual officers engaged in misconduct, there must have been some fault on the part of the City, in terms of hiring, training, supervision, or other functions. In his brief, plaintiff describes the City's inadequacies and failures as the "moving force" behind the individual officer's conduct, but nowhere in the complaint does plaintiff articulate any factual basis for inferring a causal link between his injuries and the training and supervision of Hartford police officers.

Nonetheless, on the liberal pleading standards set forth in Federal Rule of Civil Procedure 8(a), the Court determines that plaintiff has minimally adequately pled *Monell* liability on the part of the City and the Chief of Police. In *Leatherman v. Tarrant County Narcotics,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the Supreme Court rejected a Fifth Circuit rule requiring § 1983 plaintiffs to

---

**3.** Although plaintiff purports to hold Chief Croughwell liable in his individual capacity, all of plaintiff's allegations in Count Three

with respect to Croughwell concern his actions in his official role as Chief of the Hartford Police Department.

"state with factual detail and particularity the basis for the claim" of municipal liability, because it was "impossible to square the "heightened pleading standard" applied by the Fifth Circuit in this case with the liberal system of "notice pleading" set up by the Federal Rules." *Id.* at 168, 113 S.Ct. 1160. In so holding, the Court implicitly endorsed the holding of the Ninth Circuit in *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 624 (9th Cir. 1988) ("[A] claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice"), because that case was cited as the contrast to the Fifth Circuit rule, and exemplified the "conflict among the Courts of Appeals" that certiorari had been granted to resolve. *Leatherman*, 507 U.S. at 165, 113 S.Ct. 1160.

A month prior to the high court's decision in *Leatherman*, the Second Circuit had held that "[t]he mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." *Dwares v. City of New York*, 985 F.2d 94, 101 (2d Cir.1993). A number of district courts have since concluded that *Leatherman* appears to have changed the law in this circuit, in that "a plaintiff is no longer required to state or establish exactly in his complaint the policy by which the defendants violated his rights, nor is he required to plead more than a single instance of misconduct." *Simpkins v. Bellevue Hospital*, 832 F.Supp. 69, 73 (S.D.N.Y. 1993) (claim alleging policies with regards to hiring and failure to adequately screen and train doctors at public hospital); *see also DeDiego v. City of New Britain*, 1994 WL 70280 (D.Conn.) (same for police officers); *Javid v. Scott*, 913 F.Supp. 223 (S.D.N.Y.1996) (in case making allegations similar to the instant complaint regarding failure to train and supervise, "Plaintiffs' allegation, if proven true, would establish

that [defendant's] policy and custom of inadequate screening, training or supervision directly caused the excessive use of force by Scott against Javid. We find that plaintiffs have satisfied the Rule 8(a) pleading requirement for asserting a valid § 1983 claim against [defendant].").

■ The Second Circuit has not returned to the question of the pleading requirements for a claim alleging *Monell* liability based on a failure to train or supervise since *Leatherman*. In an unpublished opinion, however, the Court of Appeals did affirm dismissal of a § 1983 claim against the City of New York where the plaintiff's complaint "does not provide any facts in support of his conclusory allegation of the City's failure to properly train and supervise police officers amounts to a custom or policy, or that this custom or policy caused [plaintiff's] injuries," and that "this conclusion is true even under the liberal notice pleading standard set forth in *Leatherman v. Tarrant County Narcotics*." *Oparaji v. City of New York*, 152 F.3d 920 (2d Cir.1998). Although the opinion does not quote the plaintiff's allegations in *Oparaji* verbatim, he claimed that "it was the City's custom and policy to ineffectively screen, hire, train, supervise and discipline its police officers, and thus caused this arrest." *Id.* Mr. Hughes' complaint is quite similar, in that it is bare of *facts* suggesting that the City's alleged failure to train and supervise somehow caused his injuries.

The plaintiff does make one allegation, however, that in the Court's view distinguishes his complaint from the one deemed inadequate in *Oparaji*. In Count Three, ¶ 29 he alleges that Chief Croughwell failed or refused to enforce appropriate policies and procedures "regarding the use of Community Police Officers to make controlled substance buys and narcotics arrests; and fail[ed] to properly coordinate and delineate the roles of the Community Response Division and the Narcotics Division within the City of Hartford Police

Department." ¶ 29(f). He makes similar allegations against the City of Hartford in Count Five, ¶ 28(d). The complaint nowhere alleges that the individual defendants were either community policy officers or employed in the Narcotics Division, but based on these barest of allegations, the Court could infer that Officer Foley was a Community Police officer, that he did not receive any training in conducting undercover "buys" but was not prohibited from doing so due to the lack of coordination between his division and the Narcotics Division, and that these failures led to his botched confrontation with the plaintiff, and his subsequent decision to swear out an arrest warrant and pursue charges. Read this way, the complaint does allege a causal connection between the alleged failures on the part of the defendant and the ultimate harm visited upon plaintiff. If borne out by the evidence, plaintiff could establish that the City of Hartford's custom or policy caused his injuries at the hands of the individual officers.

■ Plaintiff's complaint skates the edge of what constitutes sufficient pleading for § 1983 municipal liability, and plaintiff's brief in opposition to the motion to dismiss does little to enlighten the Court regarding his theories of liability and the manner in which the municipal defendants can be said to have caused plaintiff's injuries. However, given the liberal pleading standards articulated in *Leatherman,* and that Court's reminder that unmeritorious claims may be weeded out "sooner rather than later" through control of discovery and summary judgment, 507 U.S. at 168, 113 S.Ct. 1160, the Court concludes that Counts Three and Five are sufficiently pled to survive a motion to dismiss. This also disposes of defendants' argument that governmental immunity bars plaintiff's claims against the City of Hartford and his official-capacity claims against Chief Croughwell, because "there is no immunity defense, either qualified or absolute, available to a municipality sought to be held liable under 42 U.S.C. § 1983." *Goldberg*

*v. Town of Rocky Hill,* 973 F.2d 70, 74 (2d Cir.1992) (immunity defense not available in action against town and town councilmen in their official capacities, where the governmental entity's "custom or policy" played a part in the violation of federal law).

Defendants' Motion to Dismiss Count Three against Chief Joseph Croughwell and Count Five against the City of Hartford is therefore denied.

### B. *Governmental Immunity*

Counts Six and Seven of plaintiff's second amended complaint assert the City's liability for the actions of defendants Foley and Polletta under Conn.Gen.Stat. § 52–557 and respondeat superior.

Count Six is brought under Conn.Gen. Stat. § 52–557n, which provides for the liability of municipalities for the "negligent acts or omissions of such political subdivision or any employee," except for acts or omissions "which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." Plaintiff asserts the defendant City's liability for plaintiff's losses suffered "... as a result of the negligent acts and omissions by the defendants, and/or others, complained of" (Second Amended Complaint, Count Six, ¶ 1) and that "[s]uch conduct, and/or policies, on the part of the defendant City of Hartford constituted a continuing and moving force behind the violation of the civil rights of the plaintiff and the injuries he has suffered...." (¶ 2).

■ "A municipality's potential liability for its tortious acts is limited by the common law principle of governmental immunity ... Governmental immunity, however, is not a blanket protection for all official acts." *Heigl v. Board of Education,* 218 Conn. 1, 4, 587 A.2d 423 (1991). "[A] municipality is immune from liability for the performance of governmental acts as distinguished from ministerial acts ... Governmental acts are performed wholly

for the direct benefit of the public and are supervisory or discretionary in nature ... [M]inisterial acts are performed in a prescribed manner without the exercise of judgment or discretion ..." (citations omitted; internal quotation marks omitted.) *Elliott v. Waterbury,* 245 Conn. 385, 411, 715 A.2d 27 (1998). Conn.Gen.Stat. § 52–557n codifies, in part, these common law principle of governmental immunity for municipalities, and limits a municipality's liability for its tortious acts or the tortious acts of its employees. *See Elliott,* 245 Conn. at 408, 715 A.2d 27. In order to ascertain whether governmental immunity applies to plaintiff's negligence claims, then, it must be determined whether there exists a public or private duty alleged by the plaintiff and whether the alleged acts or omissions were either governmental or ministerial. *See Gordon v. Bridgeport Housing Authority,* 208 Conn. 161, 166–170, 544 A.2d 1185 (1988).

Plaintiff reasons that since a governmental official has no discretion to "assault, falsely arrest, or falsely imprison a citizen" (Mem. in Opp. p. 10), the conduct alleged in his complaint is not protected by the doctrine of governmental immunity. As indicated in the language of the statute and as discussed above, however, § 52–557n applies only to claims of negligence, not plaintiff's § 1983 claims alleging constitutional violations. To the extent plaintiff's complaint raises claims of negligence, both on the part of the individual defendants and the municipal defendants, governmental immunity and § 52–557n are applicable.

▆ Plaintiff also argues that whether the acts of the defendant City of Hartford in hiring, training, and supervising police officers were ministerial or discretionary is a question of fact, as is the applicability of one of the exceptions to governmental immunity for official discretionary acts. Plaintiff cites *Gauvin v. City of New Haven,* 187 Conn. 180, 445 A.2d 1 (1982) in support of his argument that the distinction between governmental or ministerial

acts is best left for the jury, but as the Connecticut Supreme Court noted in *Gordon,* "[t]he crucial distinguishing factor is that the duty of the municipality is unquestioned under the facts pleaded in [*Gauvin* ]." 208 Conn. at 180, 544 A.2d 1185. In contrast, extensive and near-unanimous precedent in Connecticut clearly demonstrates that the acts or omissions alleged in plaintiff's complaint—the failure to screen, hire, train, supervise, control and discipline—are discretionary acts as a matter of law. *See Gordon,* 208 Conn. at 179, 544 A.2d 1185 (noting that the operation of a police department, including discipline of officers, is a discretionary, governmental function); *Stiebitz v. Mahoney,* 144 Conn. 443, 446, 134 A.2d 71 (1957) (determining that discharge of duties as chief of police in appointing individuals to police force and suspending or disciplining them "required the use of a sound discretion" which would not subject chief to liability); *Hubbard v. City of New Britain,* 1996 WL 66238 (Conn.Super.) (granting motion to strike complaint alleging negligent training of police officer regarding high speed chases because such action is clearly discretionary and protected by governmental immunity); *Doe v. Nunes,* 1995 WL 137143 (Conn.Super.) (granting motion to strike complaint alleging negligent hiring, supervising and firing of officer because such actions are discretionary duties protected by governmental immunity); *Coletosh v. City of Hartford,* 1999 WL 259656 (Conn.Super.) (case alleging excessive force on the part of Hartford police officers, instructing, supervising, controlling and disciplining police officers were discretionary acts); *Cook v. City of Hartford,* 7 Conn.L.Rptr. 270, 1992 WL 220102 (1992) ("The act of training and supervising police officers is clearly a discretionary governmental function. Consideration of who to hire, how to train such people, and how to supervise police officers on the job are decisions requiring the use of judgment and discretion. A municipality cannot employ a standard list of actions which must

be taken in utilizing its police department.")

Plaintiff has cited to no cases that would countervail the weight of this precedent. The Court concludes that the acts alleged in plaintiff's complaint on the part of the City of Hartford and Chief Croughwell are discretionary in nature, and thus protected by governmental immunity.

■ Plaintiff alternatively argues that if the City of Hartford's acts were discretionary, they nonetheless fit within the exception which allows for recovery against a municipality "when the circumstances make it apparent to the public officer that his or her failure to act would likely subject an identifiable person to imminent harm...." *Purzycki*, 244 Conn. at 108, 708 A.2d 937. He argues that members of the community, like plaintiff, face imminent harm from their encounters with improperly trained police officers (Mem. in Opp. p. 11). This "identifiable victim" exception has been construed to apply to situations involving not only identifiable individuals, but also narrowly defined identifiable classes of foreseeable victims. *See id.* In *Evon v. Andrews*, 211 Conn. 501, 508, 559 A.2d 1131 (1989), the plaintiff attempted to use this exception to hold the City of Waterbury liable for the failure of its officials to enforce various rental building statutes and regulations, alleging that the lack of statutory and regulatory enforcement resulted in a fire which killed the plaintiff's decedents. The court held that the imminent harm exception did not apply, since the harm could occur at any time in the future, or not at all, and so plaintiff's decedents were in no way within a class of identifiable victims.

Under this analysis, plaintiff is not an identifiable victim as an individual, nor within a narrowly defined class of foreseeable victims. *See Cook*, 7 Conn.L.Rptr. at 271, 1992 WL 220102. Plaintiff has not alleged any way in which he was placed at greater harm than any other member of the general public, and in fact places himself only as one member of the community potentially exposed to officer misconduct. The potential harm resulting from the failure to properly train, hire, and supervise police officers could occur to anyone at any time in the future, or not at all. Thus, plaintiff's claims do not fall within the imminent harm exception to governmental immunity for discretionary acts.

As Chief Croughwell and the City of Hartford are thus protected by governmental immunity from plaintiff's allegations of negligence, Count Six will be dismissed, as will any allegations of negligence against these two defendants contained in Count Four (Negligent Infliction of Emotional Distress as to all defendants).

■ Finally, plaintiff's theory of respondeat superior liability in Count Seven will be dismissed, because "a municipality enjoys governmental immunity for common-law negligence unless a statute has limited or abrogated that immunity." *Williams v. City of New Haven*, 243 Conn. 763, 766, 707 A.2d 1251 (1998). Plaintiff has availed himself of these statutes, and his common law claim will be dismissed accordingly. *See Velez v. City of New London*, 903 F.Supp. 286, 291 (D.Conn.1995) (claim of respondeat superior liability on part of municipality is redundant, in that plaintiff can pursue indemnification under § 52–557n and § 7–465).

### C. *Indemnification Under Conn.Gen. Stat. § 7–465*

Conn.Gen.Stat. § 7–465 obliges municipalities to indemnify their employees for damages awarded against such an employee for infringement of civil rights, or for physical damage to person or property. The statute requires potential plaintiffs to provide notice of the intention to sue the municipality by notifying the clerk of the municipality within six months of the accrual of the cause of action. The statute has been construed to require that plaintiffs plead compliance in their complaints. *See Santiago v. City of New Britain*, 42 Conn.Supp. 22, 598 A.2d 373, 374 (1991). Plaintiff in this case has complied with the

statute by notifying the proper authorities within the time line set in the statute, as indicated in the letter attached to his motion in opposition, although he has not so pled in his complaint. Plaintiff has requested leave to amend the complaint to plead notice. Accordingly, Defendants' Motion to Dismiss Count Eight is denied, with leave to renew should plaintiff fail to amend his complaint in accordance with his representations.

## V. CONCLUSION

Defendants' Motion to Dismiss [doc. # 28] is DENIED in part and GRANTED in part. As to plaintiff's civil rights claims against Chief Croughwell and the City of Hartford (Counts Three and Five), as well as his claim seeking indemnification under § 7–465 (Count Eight), the motion is DENIED. As to Counts Six and Seven, as well as that portion of Count Four alleging negligence on the part of the Chief Croughwell and the City of Hartford, the motion is GRANTED.

Plaintiff's amended complaint in compliance with this ruling shall be filed within five days from the filing date of this ruling.

IT IS SO ORDERED.