******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

EVELEIGH, J., concurring and dissenting. I agree with the majority that "the trial court improperly granted the motion for summary judgment as to [the defendants Dale J. McCubrey] and [Ross] Sward with respect to the . . . claim that they breached their ministerial duty to assign school staff to supervise students during school hours." I further agree with the majority that, with regard to the identifiable person-imminent harm exception to the doctrine of governmental immunity, the named plaintiff, Joseph Strycharz,[1] "remained a member of the identifiable class of foreseeable victims to the extent that the defendants[2] had a duty to supervise him while under their custody and control." (Footnote added.) I respectfully disagree, however, with the majority's conclusion that the defendants are entitled to summary judgment on the claims relating to their discretionary acts "because there is insufficient evidence in the record from which a jury reasonably could conclude that it was apparent to the defendants that there was a risk of imminent harm because students arriving by bus were crossing Norwich Avenue before the start of the school day." In my view, the circumstances existing in this case present a classic question of fact for the jury. Furthermore, since the trial court used a standard that we no longer employ and relied upon cases that we have now disavowed, at the very least, I would remand the present case for another hearing on the motion for summary judgment to determine whether the identifiable person-imminent harm exception to the doctrine of governmental immunity should apply.[3]

I disagree, in particular, with the majority's representation that this case should not be remanded for a new hearing on the motion for summary judgment because its "decision . . . does not rest on the plaintiff's failure to satisfy the imminency prong of the identifiable person-imminent harm exception but, rather, on his failure to satisfy the *apparentness* prong of the exception, the requirements of which have not changed since the commencement of this action." (Emphasis in original.) See footnote 36 of the majority opinion. First, in granting the defendants' motion for summary judgment in the present case, the trial court specifically concluded that the plaintiff had not established an imminent harm and did not focus on the apparentness prong. Specifically, the trial court concluded that "the risk of an accident at the subject intersection in the present case may have been substantial, but it was ongoing and continuous, rather than imminent and discrete. An injury at the subject intersection could have occurred at any time or not at all." Second, in *Haynes* v. *Middletown*, 314 Conn. 303, 322–23, 101 A.3d 249 (2014), which was decided after the trial court granted summary judgment

in the present case, we clarified that "the proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm." Accordingly, I would conclude that, under *Haynes*, apparentness and imminency are inextricably linked. Third, in *Edgerton* v. *Clinton*, 311 Conn. 217, 238–39, 86 A.3d 437 (2014), which was also decided after the trial court granted the motion for summary judgment in the present case and is cited by the majority, we clarified the apparentness standard. Specifically, in *Edgerton*, we explained that the question is whether the government official "was or should have been aware that her acts or omissions likely would have subjected [the plaintiff] to imminent harm." Id., 239. Therefore, on the basis of the trial court's decision and the changes in the law after the decision in the present case, I would conclude that, at a minimum, this case should be remanded to the trial court for a new hearing on the motion for summary judgment that would provide the parties the opportunity to present evidence in light of the clarified standard for imminent harm.

The majority places the burden of proof on the plaintiff in the present case. Specifically, the majority explains that "[t]he issue in this case is whether there is sufficient evidence for a jury reasonably to conclude that the school was aware that students were crossing Norwich Avenue *in violation of school policy after getting off the bus* on school property and before the start of the school day." (Emphasis in original.) I disagree with that understanding of the plaintiff's burden at the summary judgment stage. It is well established that "[i]n seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue." (Internal quotation marks omitted.) *State Farm Fire & Casualty Co.* v. *Tully*, 322 Conn. 566, 573, 142 A.3d 1079 (2016).

In the present case, the majority concludes that "the

plaintiff does not identify any facts in the record that would have made it apparent to the defendants that students arriving by bus were crossing Norwich Avenue before the start of school." Although the majority acknowledges that the plaintiff presented evidence by way of an affidavit stating that he crossed Norwich Avenue every day after getting off the bus and that many other students did the same, and deposition testimony from another student, Alexander Lily, stating that crossing the street before the start of school was "a normal thing" to do, the majority states this evidence is "insufficient to create a genuine issue of material fact with respect to this issue." I disagree. The majority's analysis places the burden on the plaintiff and does not view the evidence in the light most favorable to the opponent. In the present case, the majority does not hold the movant to a "strict standard," and does not require the movant to "make a showing that it is quite clear what the truth is . . . ." (Internal quotation marks omitted.) *State Farm Fire & Casualty Co.* v. *Tully*, supra, 573. To the contrary, the majority seems to hold the plaintiff to a strict standard and require him to make a showing of what the truth is in order to avoid summary judgment.

As I explained previously in this opinion, *Haynes* v. *Middletown*, supra, 314 Conn. 303, established a new standard for establishing identifiable person-imminent harm exception to the doctrine of governmental immunity. In *Haynes*, we explained that "the proper standard for determining whether a harm was imminent is whether it was apparent to the municipal defendant that the dangerous condition was so likely to cause harm that the defendant had a clear and unequivocal duty to act immediately to prevent the harm." Id., 322–23. In doing so, we explicitly overruled *Burns* v. *Board of Education*, 228 Conn. 640, 638 A.2d 1 (1994), and *Purzycki* v. *Fairfield*, 244 Conn. 101, 708 A.2d 937 (1998), "to the extent that they adopted a different standard." *Haynes* v. *Middletown*, supra, 323.

The plaintiff in *Haynes* was a high school student who had engaged in horseplay in the boys' locker room, in violation of a school rule, during the five minute interval between classes when the locker rooms were open so that students could change their clothes before or after gym class. Id., 308 and n.3. He suffered a cut on his arm when he was pushed against the jagged edge of a broken locker that had been in that condition for seven months. Id., 307–308. To establish the imminent harm exception, the plaintiff relied on evidence that the locker had been broken for seven months and school officials were aware that horseplay in the locker room was an ongoing problem. Id., 325. Applying the newly developed test to the facts of *Haynes*, we reasoned as follows: "Although this evidence is far from compelling, we are unable to conclude that no reasonable juror could find that it was apparent to school officials that, in combination, the ongoing problem of horseplay in

the locker room and the presence of the broken locker were so likely to cause an injury to a student that the officials had a clear and unequivocal duty to act immediately to prevent the harm either by supervising the students while they were in the locker room to prevent horseplay or by fixing the broken locker." Id., 325. Although we stated that the evidence was thin, and there was no evidence that school officials were aware of the broken locker, we concluded that the case had to be remanded so that a jury could determine whether the plaintiff had established the imminent harm exception. Id., 307. In other words, we concluded in *Haynes* that the issue of whether the plaintiff had met its burden of establishing the identifiable person-imminent harm exception could not be decided as a matter of law on the basis of the facts contained within the record.

In light of our reasoning in *Haynes*, I would similarly conclude that summary judgment was not proper in the present case, and that a jury must determine whether the plaintiff had established the identifiable person-imminent harm exception. Indeed, unlike in *Haynes*, in the present case the evidence established that school officials knew of the risk to student safety posed by the busy intersection. Specifically, McCubrey, the school's assistant principal, testified that there was a risk to student safety in the area of Norwich Avenue where it intersects with the entrance of the school. He testified that "sometimes the traffic on Norwich Avenue would be to the extent that we would be concerned about student safety crossing that street." The evidence also established that the school had a policy requiring that two staff members be assigned to the area every morning in order to ensure that students would go directly into school from the bus. The evidence presented also created a genuine issue of material fact as to whether on the morning that the plaintiff was injured, there were any staff members performing this duty. Accordingly, I would conclude that it is proper for the jury to determine whether it was so apparent to school officials that the lack of supervision posed a risk of imminent harm to the students.

In the present case, as in *Haynes*, the trial court determined that, as a matter of law, the plaintiff could not satisfy the requirements for the identifiable person-imminent harm exception because the dangerous condition was not temporary, and the risk of getting hit by a car was the sort of harm that could occur at anytime. In *Haynes*, we reversed the decision of the trial court granting summary judgment to the municipal defendant. *Haynes* v. *Middletown*, supra, 314 Conn. 307. I concurred in the result in *Haynes*, but suggested that the test should be whether the harm "was, or should have been, apparent to the municipal defendant that the dangerous condition was so likely to cause harm in the near future that the defendant had a clear and unequivocal duty to act to prevent the harm." Id., 338.

The majority responded that "[b]ecause the question of whether the standard is subjective or objective is not before us, we express no opinion on it." Id., 323 n.15. Therefore, the proper standard to be applied in this case was expressed in *Edgerton* v. *Clinton*, supra, 311 Conn. 217. In *Edgerton*, we recognized that "we have described the apparentness requirement as 'would have made it apparent.' We take this opportunity to clarify that the test is an objective one. We do not ask whether the government agent actually knew that harm was imminent but, rather, whether the circumstances would have made it apparent to a reasonable government agent that harm was imminent." Id., 231 n.14. As we ultimately decided in *Haynes*, however, the question of whether the defendants had a clear and unequivocal duty to act, in my view, is best left for a jury. Applying the objective standard test expressed in *Edgerton* to the facts in the present case, I would conclude that the trial court improperly granted summary judgment in favor of the defendants.

The defendants knew about the dangerous intersection and the need to protect students from its hazards. Specifically, the defendants knew that the intersection of the school driveway and Norwich Avenue, immediately in front of the school, subjected students to the risk of being injured. Norwich Avenue is a state highway with a speed limit of forty miles per hour in front of the school. Despite the posted speed limit, vehicles passing in front of the school regularly traveled at speeds of approximately fifty miles per hour. Each morning, 1000 students arrived for school. Some of these students arrived on buses, some were driven by their parents, some drove themselves, and others arrived on foot. Students who walked to school used the crosswalk at the intersection to cross Norwich Avenue. There was no crossing guard or traffic agent at that intersection. On July 23, 2007, Karen A. Loiselle, the superintendent of schools of the town of Colchester, went to the municipal police commission and said that there was an immediate need for coverage at the intersection. Three weeks later, the Board of Education of the Town of Colchester voted to hire a crossing traffic agent, but the actual hiring did not take place until after the plaintiff was injured.

The school had a student supervision program. Staff members were assigned to bus duty where they were responsible for making sure that students who arrived by bus entered the school building immediately and did not leave school grounds. The purpose of the rule was student safety. The plaintiff's affidavit indicates that school staff members were never at the bus port and were not present on the day of the accident. The undisputed evidence shows that no one ever directed the plaintiff into school, and no one ever attempted to stop him from walking through school grounds or from crossing Norwich Avenue.

On the basis of the foregoing facts, I would conclude that the trial court should not have granted the defendants' motion for summary judgment on the ground that no reasonable juror could have found that the plaintiff had established the identifiable person-imminent harm exception to governmental immunity. See *Haynes* v. *Middletown*, supra, 314 Conn. 326 ("we conclude that the Appellate Court improperly upheld the ruling of the trial court granting the defendant's motion to set aside the verdict in favor of the plaintiffs and to render judgment in favor of the defendant on the ground that no reasonable juror could have found that the plaintiffs had established the imminent harm to identifiable persons exception to governmental immunity"). Specifically, I would conclude that a reasonable juror could determine that, if the school failed to follow its own policy of providing supervision at the bus port, despite being aware of the danger posed by the busy intersection, that the plaintiff established sufficient facts to satisfy the identifiable person-imminent harm exception to governmental immunity. See *Hurley* v. *Heart Physicians*, *P.C.*, 278 Conn. 305, 323–24, 898 A.2d 777 (2006) ("we conclude that whether [the] actions [of the defendant's agent] were in derogation of the warnings in the technical manual was an issue of material fact sufficient to defeat the defendant's motion for summary judgment").

I would conclude, as we did in *Haynes*, that the determination of whether the facts satisfy the requirements of the identifiable person-imminent harm exception is an issue for the jury. Indeed, I see little difference between the lack of supervision in the locker room in *Haynes*, and the alleged lack of supervision in the bus port at the school in the present case. Both issues involve a question of child safety. This case may even be stronger than *Haynes* because, in the present case, there was an established policy requiring the presence of two staff members in the morning to protect the students, unlike the case in *Haynes* wherein there was no policy requiring supervision of the students in the locker room. See *Haynes* v. *Middletown*, supra, 314 Conn. 309. Both cases involve high school students who were engaged in activities that violate the rules of the school. In *Haynes*, the jury took the plaintiff's actions into account and reduced the verdict. See id. The other difference between the two cases is that, in the present case, the actual injury occurred just off of the school property. The allegation of imminent harm, however, occurred through the lack of supervision while the plaintiff was on school property. In light of these facts, I agree with the majority that we should not endorse a rule stating that there is no liability because the accident occurred off of school property.

As I explained previously in this concurring and dissenting opinion, I agree with the majority's conclusion,

contrary to the trial court, that the plaintiff "remained a member of the identifiable class of foreseeable victims to the extent that the defendants had a duty to supervise him while under their custody and control." Accordingly, the defendants owed him a duty of care to protect him from imminent harm. See *Haynes* v. *Middletown*, supra, 314 Conn. 322–23. This duty to supervise students is supported by the legislative history of General Statutes § 52-557n. See *Elliott* v. *Waterbury*, 245 Conn. 385, 399, 715 A.2d 27 (1998) ("[the] rejection of the notion of immunity for teachers and their municipal employers when their negligent supervision allowed students to harm themselves or each other is one of the few clear manifestations of legislative intent that emerges from the murky legislative history of the municipal liability section of the Tort Reform Act of 1986").

Additionally, in the present case, the defendants undertook the duty to supervise students when they arrived at school on school buses. Specifically, Jeffry P. Mathieu, the school's principal, was required to provide for the supervision of students in school hallways and on school grounds under the school's supervision program. The supervision program required two staff members to serve on bus duty each morning. These staff members were provided written and oral instructions informing them of their supervisory duties. In particular, staff members were required to occupy visible positions at two entrances located near the bus port and enforce all school rules, including the rule that students had to immediately enter the school building when they arrived on buses and could not leave school grounds. The school's administrators periodically walked the school grounds to ensure that staff members were at their posts and performing their duties, and Mathieu made inquiries to ensure that student supervision was performed according to plan. The plaintiff claims that if staff members had performed their duties, he would have been directed safely inside the school building on the morning in question. Instead, he walked across Norwich Avenue and sustained injuries as the result of being struck by a car. In my view, pursuant to *Haynes*, a genuine issue of material fact existed as to whether a jury reasonably could have inferred from the evidence that the dangerous traffic condition was apparent to the defendants and that, in the absence of supervision, a risk of imminent harm was posed to the students arriving on the bus that morning.

I respectfully disagree with the majority's conclusion that, as a matter of law, the harm to the plaintiff in the present case was not imminent because "the plaintiff does not identify any facts in the record that would have made it apparent to the defendants that students arriving by bus were crossing Norwich Avenue before the start of school." As I have explained previously in this opinion, the issue is whether there is a genuine issue of material fact that it was apparent to the defen-

dants that students arriving by bus would be in danger if not properly supervised after arriving at school. I would respectfully assert that, in narrowing the issue so as to require the plaintiff to prove that it was apparent to the defendants that students arriving by bus would cross Norwich Avenue, the majority seems to be focusing on the plaintiff's contributory negligence. Contributory negligence, however, is a matter for the jury to decide. It is not a basis for deciding that the identifiable person-imminent harm exception does not apply. Indeed, contributory negligence existed in *Haynes*, and it resulted in a significantly reduced verdict, but it had no impact on whether the identifiable person-imminent harm exception applied. *Haynes* v. *Middletown*, supra, 314 Conn. 309. Contributory negligence and its impact on an award of damages are matters for the jury to determine.

The majority concludes that "[t]he issue in this case is whether there is sufficient evidence for a jury reasonably to conclude that the school was aware that students were crossing Norwich Avenue in violation of school policy after getting off the bus on school property and before the start of the school day. There is no such evidence." (Emphasis omitted.) I disagree. Although all of the defendants who were deposed testified that they had no knowledge of students crossing Norwich Avenue after getting off the bus, the plaintiff has established a genuine issue of material fact as to whether the defendants knew or should have known that their acts or omissions likely would have subjected the plaintiff to imminent harm. Specifically, the evidence demonstrated that the school had a policy of posting staff members at the bus port and that the purpose of that policy was to ensure that students were safe and went into school when they got off the bus. Furthermore, the plaintiff signed an affidavit indicating that many students left school property in the morning after getting off of buses and crossed Norwich Avenue. Taking this evidence in the light most favorable to the plaintiff, I would conclude that a reasonable juror could have concluded that the defendants knew or should have known that there was a risk that students would leave school property and cross Norwich Avenue in the morning before the start of school. Accordingly, the trial court should not have granted summary judgment in the present case.

In the alternative, I would reverse the trial court's award of summary judgment as it related to the defendants' discretionary acts and remand this case to the trial court for a new hearing so that the correct legal standard may be applied. Ordinarily, the trial court's failure to apply the correct legal standard results in a remand to the trial court for application of the correct standard. In deciding that a remand is appropriate, we have previously reasoned as follows: "[A] party is generally entitled to a new trial when, on appeal, a different

legal standard is determined to be required, unless we conclude that, based on the evidence, a new trial would be pointless. . . . We presume that any insufficiency in proof was caused by the subsequent change in the law . . . [and] not the [party's] failure to muster evidence." (Citation omitted; internal quotation marks omitted.) *McDermott* v. *State*, 316 Conn. 601, 611, 113 A.3d 419 (2015). Similarly, in the present case, I would conclude that any insufficiency in proof by the plaintiff was caused by the subsequent change in the law and that he should be given the chance to muster evidence in light of the new legal standard.

Additionally, a remand for a new hearing is proper in the present case because the trial court's analysis is based on two propositions that we specifically disavowed in *Haynes*. First, the trial court explained that "[t]he present case also does not fall within the limited circumstances under which imminence may be established. This is not a case that involves a discrete place and time at which the harm could have occurred. Even assuming that the injury occurred in a discrete place and thus was limited in geographical scope, the injury was not limited in duration, but could have occurred at any time. Contrary to the arguments of the plaintiff, it could have occurred before, during, or after school hours, and the 'condition' causing the injury, i.e., a dangerous intersection, cannot be considered to have been temporary. . . . Here . . . the harm could have occurred to any student that left school premises at any time and attempted to cross the subject intersection." (Citations omitted.) Second, the trial court further reasoned as follows: "Here, there is nothing indicating that the risk of harm was imminent. The alleged danger was not limited to a discrete, nonrecurring period of time, such as is the case with a danger that arises from a particular patch of ice, nor was the danger limited to a discrete yet recurring and predictable . . . period of time, as when young children are left unsupervised for a half hour period at the same time each day." Finally, the trial court concluded that "[a]n injury at the subject intersection could have occurred at any time or not at all." In *Haynes*, however, we explicitly stated "that the portion of this court's decision in *Burns*, on which *Purzycki* relied, holding that a harm is imminent when the condition causing the risk of harm is temporally limited and the risk of harm is 'significant and foreseeable' should be overruled." *Haynes* v. *Middletown*, supra, 314 Conn. 316. In *Haynes*, we further explained that "[o]ur statement in *Evon* v. *Andrews*, [211 Conn. 501, 508, 559 A.2d 1131 (1989)], that a harm is not imminent if it 'could have occurred at any future time or not at all' was not focused on the *duration* of the alleged dangerous condition, but on the *magnitude of the risk* that the condition created." (Emphasis in original.) *Haynes* v. *Middletown*, supra, 322.

Further, in the present case, the trial court held that

"the plaintiff in the present case is not an elementary school student to which the same duty of supervision is owed." In support of this proposition, the trial court cited *Heigl* v. *Board of Education*, 218 Conn. 1, 8, 587 A.2d 423 (1991), in which this court stated the following: "Neither the General Statutes nor our decisional law has ever stated that a board of education has a specific duty to supervise high school students. Even if such a duty exists, actions pursuant to such a duty are discretionary if they are performed wholly for the direct benefit of the public . . . ." (Internal quotation marks omitted.) We have, however, subsequently explained that "[i]n *Burns* . . . this court distinguished *Heigl* on the ground that *Heigl* had 'turned on the public/private duty distinction of the public duty doctrine,' and did not involve the 'foreseeable class of victim exception to governmental immunity, which applies irrespective of whether the official's duty is technically public or private in nature.' This court held in *Burns* that school officials do have a general duty 'to protect the pupils in [their] custody from dangers that may reasonably be anticipated. . . . *Burns* did not limit this holding to grade school students. Accordingly, we conclude that *Heigl* is inapplicable when the plaintiff has made a colorable claim that the defendant's failure to supervise a high school student has subjected the student to imminent harm." (Citation omitted; footnotes omitted.) *Haynes* v. *Middletown*, supra, 314 Conn. 314–15. In doing so, we emphasized that the fact finder could take into account all of the surrounding facts and circumstances in order to determine if a harm was imminent. Id., 315 n.7. Therefore, this justification for granting the defendants' motion for summary judgment in the present case was specifically rejected in *Haynes*.

On the basis of the foregoing, I would conclude that, at a minimum, this case should be remanded to the trial court for a new hearing on the defendants' motion for summary judgment in which both sides would be able to prepare their case in light of our decisions in *Haynes* and *Edgerton*.

Therefore, for the reasons stated previously in this opinion, I respectfully concur and dissent.

[1] The remaining plaintiff in the present case, Kiersten Strycharz, is not a party to this action in her individual capacity. See footnote 1 of the majority opinion. For the sake of simplicity, I refer to Joseph Strycharz as the plaintiff hereinafter.

[2] Although there are other defendants in the present case; see footnote 2 of the majority opinion; only Elizabeth A. Ciccione, Andrew C. George, Jr., William D. Hettrick, Linda M. Hodge, Karen A. Loiselle, Jeffry P. Mathieu, John Mazzarella, Dale J. McCubrey, Ross Sward, and the town of Colchester are relevant to the present appeal. For the sake of simplicity, I refer to these parties collectively as the defendants and individually by name throughout this opinion.

[3] I agree with both the facts and the standard of review set forth by the majority. For the sake of clarity, I provide additional facts where necessary for my analysis.