[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION I FACTS
CT Page 11064
The plaintiff, Jane Doe, brought the present action through her mother and next friend, Jill Doe, against the defendants, Klingberg Family Centers, Inc. and Klingberg Comprehensive Program Services, Inc. (collectively Klingberg), Malcolm Yelling and the New Britain board of education (the board of education). The plaintiff's complaint alleges the following facts. Klingberg maintains various programs to help persons dealing with abuse, family problems, addictions, abandonment and emotional/behavioral problems. The board of education contracted with Klingberg for the provision of special education services. Klingberg received compensation for those services from the board of education. At all times relevant to the plaintiff's complaint, Klingberg employed Yelling as a teaching assistant.
From February 9, 1998 through March 6, 1999 the plaintiff attended the Klingberg program as an alternative to public school as part of the board of education's special education services. Yelling befriended the plaintiff while she was attending the Klingberg program. On at least one occasion, Yelling kissed and touched the plaintiff in a sexual manner in the intervention room at the Klingberg program. On numerous occasions, Yelling initiated and coerced the plaintiff into engaging in sexual acts at various locations. As a result of the sexual abuse and exploitation to which Yelling subjected the plaintiff, the plaintiff suffered permanent, severe and continuing emotional and psychological injuries.
The board of education has moved to strike counts seven, nine and eleven of the complaint on grounds of sovereign and governmental immunity and count twelve on the ground that it fails to allege facts sufficient to demonstrate the "deliberate indifference" on the board's part required to establish a violation of the plaintiff's civil rights.
 II MOTIONS TO STRIKE
"Whenever any party wishes to contest . . . the legal sufficiency of the allegations of any complaint . . . or of any one or more counts thereof, to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested pleading or part thereof." Practice Book § 10-39(a). The court must "take the facts to be those alleged in the complaint . . . and . . . construe the complaint in the manner most favorable to sustaining its legal sufficiency." (Internal quotation marks omitted.) Eskin v. Castiglia,253 Conn. 516, 522-23, 753 A.2d 927 (2000). CT Page 11065
"[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Moreover . . . [w]hat is necessarily implied [in an allegation] need not be expressly alleged. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Citations omitted; internal quotation marks omitted.) Doe v. Yale University, 252 Conn. 641, 667,748 A.2d 834 (2000). "A motion to strike . . . does not admit legal conclusions or the truth or accuracy of opinions
stated in the pleadings." (Emphasis in original; internal quotation marks omitted.) Faulkner v. United Technologies Corp.,240 Conn. 576, 588, 693 A.2d 293 (1997).
 III DISCUSSION A Counts Seven, Nine and Eleven
The board of education seeks to strike counts seven, nine and eleven, sounding in negligent supervision, negligent failure to implement and/or enforce policies and/or procedures for the prevention of sexual abuse and negligent infliction of emotional distress, respectively. The motion is brought on the grounds that the plaintiff failed to allege a duty on the part of the board of education and that the doctrines of sovereign and governmental immunity preclude the action.[1]
 1 Sovereign Immunity
"(T)he command of the state constitution places the ultimate responsibility for the education of the children of Connecticut on the state". New Haven v. State Board of Education, 228 Conn. 699, 702
(1994). This "constitutional mandate", Board of Education v. New Haven,237 Conn. 169, 174 (1996), stems from article 8, section 1 of the constitution of Connecticut adopted in 1965.[2] Thus, "the furnishing of an education for the public is a state function and duty". Cheshirev. McKenney, 182 Conn. 253, 257 (1980).
By statute[3] the duty to provide and administer public education has been delegated to local, and regional boards of education. "These local CT Page 11066 entities must, however, fulfill the educational interests of the state by meeting certain mandates." New Haven v. State Board of Education, supra,228 Conn. 704. Thus, "a town board of education is an agency of the state in charge of education in the town. . . ." Board of Education of Stamfordv. Board of Finance, 127 Conn. 345, 349 (1940)
"Local boards of education are not agents of the state, however, in performing each and every mandated function. . . . Local boards of education act as agents of the state when fulfilling the statutory duties imposed upon them by the legislature in light of the state constitutional mandate to furnish public education. . . . Local boards of education also are agents of the towns, subject to the law governing municipalities, when acting on behalf of the municipality in its function of mandating control over the public schools within the municipality's limits . . . (S)ee General Statutes 10-220, 10-240." (Citations omitted.) R.A.Civitello Co. v. New Haven, 6 Conn. App. 212, 218 (1986).
What are the concrete tests to determine whether a local board such as the defendant here is shielded by sovereign immunity as an agent of the state? "In determining whether a local school board is afforded the protections consistent with the doctrine of sovereign immunity, the courts look to whether the suit would operate to control or interfere with the activities of the state." (Citations omitted.) Id. "The vital test is to be found in the essential nature and effect of the proceeding . . ." and whether the state "though not a named defendant, is the real party against whom relief is sought, so that the judgment, though nominally against the [agent of the state], will operate to control the activities of the state or subject it to liability. . . ." Somers v. Hill,143 Conn. 476, 479 (1956).
Applying these tests, the great majority of Superior Courts which have considered whether sovereign immunity shields local boards of education from liability for alleged tortious acts have concluded that it does not. See, e.g., Russell v. McKenna, Superior Court, judicial district of New London, Docket No. 541208 (Feb. 26, 1998), and cases collected there. See also O'Farrell v. Claude Chester Elem. School, Superior Court, judicial district of New London, Docket No. 526692 (Aug. 16, 1996) (sovereign immunity does not shield school system from negligence claims based on alleged failure to train and supervise and to promulgate rules and procedures); Martin v. Plude, Superior Court, judicial district of Fairfield, Docket No. CV 91 278393 (Mar. 18, 1994) (sovereign immunity not a shield where action based on allegations that teacher had sexual relations with a student); Little v. Booth, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. CV 92 514952 (Oct. 28, 1993) (local board not shielded from claims of inadequate supervision of teacher alleged to have sexually abused student). CT Page 11067
There are two Superior Court decisions holding that a board of education acts as an agent of the state in performing its duties to transport students to and from special education classes; see Todd M. v.Richard L., 44 Conn. Sup. 527 (1995); Crandall v. Groton, Superior Court, judicial district of New London at Norwich, Docket No. 102935 (November 26, 1993); and enjoys sovereign immunity from suit for alleged tortious acts committed on students while being transported. In finding that the board of education was acting as an agent of the state, the courts in those cases relied on detailed state regulations requiring local boards of education to provide "safe arid appropriate" transportation for special education students and to hire transportation aides when necessary to ensure such "safe and appropriate" transportation. See § 10-76d-19 of the Connecticut General Administrative Regulations. In Crandall it was these very transportation aides who allegedly verbally and physically harassed the plaintiff. InTodd M. the court found that sovereign immunity was available to the defendants because special education services, including transportation, were provided by the board of education "pursuant to a specific educational mandate of the state". Id., 541.
To the degree that these cases consider the statutory mandate to provide special education services more compelling than the overarching constitutional mandate by which local boards provide general education services as agents of the state, this court does not find them persuasive and comes down on the side of the majority of cases which have considered the availability of sovereign immunity as a defense to allegedly tortious conduct on the part of teachers or other employees of local boards.
There is no way that this action "would operate to control the activities of the state or subject it to liability". Cahill v. Board ofEducation, 187 Conn. 94, 102 (1982). Any judgment for the plaintiff here would be the responsibility of the municipality not the state. The state is not the real party in interest; the board and the municipality are.
In Purzvcki v. Fairfield, 244 Conn. 101 (1998), a case well known for the issues of governmental immunity which it addressed, the Court had also to consider sovereign immunity as an alternative ground for setting aside a plaintiff's verdict in an action arising out of an injury suffered by a student when he was tripped by a fellow student while in the school hallway. Rejecting sovereign immunity as a shield for the defendant board of education, the Court held that "(t)he duty to supervise students is performed for the benefit of the municipality". Id., 112. No reason would appear why the duty to supervise teachers, which is at the heart of this case, would not likewise be one performed by the defendant board for the benefit of the municipality. CT Page 11068
 2 Governmental Immunity
"A town board of education can be an agent of the state for some purposes and an agent of the municipality for others . . . A town board of education thus potentially enjoys immunity under two different theories of immunity for acts carried out within its governmental capacity." (Citation omitted.) Heigl v. Board of Education, 218 Conn. 1, 3-4,587 A.2d 423 (1991).
General Statutes § 52-557n (a)(2)(B) provides that "a political subdivision of the state shall not be liable for damages to person or property caused by . . . negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." The statute codifies "the common law rule that municipalities and their employees or agents have immunity from negligence liability for governmental acts involving the exercise of judgment or discretion as opposed to those acts which are purely ministerial in nature, i.e. those which are performed in a prescribed manner without the exercise of judgment or discretion." Nemecekv. Ashford, Superior Court, judicial district of Rockville, Docket No. 070811 (December 14., 2000, Bishop, J.). The parties agree that the duties implicated by counts seven, nine and eleven, to supervise and to promulgate or enforce policies and procedures, are discretionary in nature.
Not all discretionary acts, however, are protected by governmental immunity. Connecticut courts "recognize three . . . exceptions: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Internal quotation marks omitted.) Purzvcki v. Fairfield, 244 Conn. 101,108, 708 A.2d 937 (1998) Only the identifiable person-imminent harm exception is applicable in the present case.
"[O]ur Supreme Court has held that school children, who are it statutorily required to attend school, are an identifiable class of foreseeable victims." Id., 184. See also Purzvcki v. Fairfield, supra,244 Conn. 109. The plaintiff in the present case was a child attending public school, albeit at a private facility, when she came into contact with Yelling and when the alleged abuse began. Accordingly, the court CT Page 11069 finds she was a member of a foreseeable class of victims and the court need only address the imminence of any potential harm.
Factors considered by our courts in determining the imminence of potential harm include whether the potential for harm existed during a limited time period and limited geographical area, whether the harm involved a temporary condition and whether the risk of harm was significant and foreseeable. See Purzvcki v. Fairfield, supra,244 Conn. 110. For example, in Evon v. Andrews, 211 Conn. 501,559 A.2d 1131 (1989), the court held that the harm from faulty wiring was not imminent because it could have caused a fire at any time or never at all. In Purzycki v. Fairfield, supra, 244 Conn. 101, on the other hand, the court held the potential for harm was limited in time and geographic scope where a student was injured when he was tripped by another student in an unsupervised hallway between lunch and recess when all other times of the day were supervised. See also Colon v. New Haven, 60 Conn. App. 178
(2000) (holding the potential for harm was limited in time and geographic scope where a student was injured by a door swung open by a teacher);Burns v. Board of Education, 228 Conn. 640, 638 A.2d 1 (1994) (holding the potential for harm was limited to a temporary condition where a student was injured when he fell on a patch of ice in the school courtyard).
The facts of the present case are similar to those in Evon v. Andrews
and dissimilar to those in Purzvcki v. Fairfield because the abuse alleged could have occurred at any time or never at all. Furthermore, the harm was not limited in geographic scope as the harm continued outside the classroom; indeed most of the alleged acts occurred outside the classroom. Nor was the potential for harm limited to a temporary condition. The plaintiff had daily interaction with Yelling at Klingberg and he contacted the plaintiff and perpetrated much of his abuse outside the classroom. Finally, although the harm from sexual abuse is obviously significant, the plaintiff does not allege any facts that would indicate it was foreseeable to the board of education that one of Klingberg's employees would sexually assault a student. Compare, Purzycki v.Fairfield, supra, 244 Conn. 101, (finding foreseeability where the principal of the school admitted that children run in the hallways when they are left unsupervised).
Accordingly, the court finds the identifiable person-imminent harm exception does not apply in the present case. Therefore, the motion to strike counts seven, nine and eleven is hereby granted.
 B Count Twelve
CT Page 11070
The board of education seeks to strike count twelve, which alleges a violation of civil rights, on the ground that the plaintiff's complaint fails to allege facts sufficient to demonstrate that the board of education acted with "deliberate indifference." The plaintiff alleges, to the contrary, that the factual allegations of her complaint fulfill the requirement of pleading a violation of 42 U.S.C. § 1983.
"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."42 U.S.C.A. § 1983
(Supp. 2001). "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." (Internal quotation marks omitted.) Pembaur v. Cincinnati, 475 U.S. 469, 477,106 S.Ct. 1292,89 L.Ed.2d 452 (1986). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983."Monell v. Department of Social Services, 436 U.S. 658, 694,98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
Where a plaintiff's § 1983 action against a municipality is based on a claim of negligent training, the United States Supreme Court has held that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a `deliberate indifference' to the rights of its.inhabitants can such a shortcoming be properly thought of as a city `policy or custom' that is actionable under § 1983." Canton v.Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "[I]t may happen that in light of the duties assigned to specific . . . employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id., 390. It will not "suffice to prove that an injury or accident could have been avoided [by] better or more training. . . . Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program. . . ." Id., 391.
"[T]hree requirements . . . must be met before a municipality's failure to train or supervise constitutes deliberate indifference to the constitutional rights of citizens. First, the plaintiff must show that a CT Page 11071 policymaker knows `to a moral certainty' that her employees will confront a given situation . . . Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. . . . Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights."Walker v. New York, 974 F.2d 293, 297-98 (2nd Cir. 1992).[4]
The plaintiff in the present case has not made sufficient factual allegations to support the three requirements of Walker. Although her complaint alleges deliberate indifference on the part of the board of education; (see Complaint, count 12, ¶ 22); the plaintiff did not plead any facts to support that legal conclusion. First, she has not alleged the board of education knew that teachers in general, or teachers in the special education program in particular, would encounter incidents of sexual abuse by their co-workers against their students. Nor did she allege any facts to support her allegation that the board should have known the abuse was occurring; she did not allege the board of education was aware that abuse had occurred prior to the present case and she alleged Yelling tried to keep the abuse from others. (See Complaint, count twelve, ¶ 17.) Second, the plaintiff has not alleged that training would be necessary to help teachers deal with detecting or preventing such abuse. In Walker v. New York, supra, 974 F.2d 293, the court found training was not necessary with respect to perjury by police officers absent a showing of a history of perjury, because such knowledge should be obvious to police officers and lay persons. Similarly, in the present case, it appears to the court that it is obvious to teachers and lay persons alike, without training, that sexual abuse is unacceptable.
Doe v. Vibert, Superior Court, judicial district of New Britain, Docket No. 048332 (July 12, 1999, Aurigernma, J.), and Stoneking v. BradfordArea School District, 882 F.2d 720 (3rd Cir. 1989), are cited by the plaintiff as being analogous to the present case. Unlike the present action, however, in those cases the plaintiffs alleged the defendants had actual knowledge of the abuse that occurred and also had actual knowledge of prior cases of abuse. The plaintiff in the present case has made no allegations of actual knowledge nor has she plead any facts that would allow the court to infer such knowledge. Furthermore, the court in Doev. Vibert struck the plaintiff's § 1983 claim because it found that allegations that another teacher had actual knowledge of the sexual abuse were insufficient to demonstrate "deliberate indifference" on the part of the board of education. See Doe v. Vibert, supra, Superior Court, Docket No. 048332. In the present case, the plaintiff has not alleged that anyone other than the plaintiff and Yelling knew of the abuse, nor has she alleged any facts that would lead the court to such a finding. CT Page 11072
Accordingly, the court grants the board of education's motion to strike count twelve.
 IV CONCLUSION
Counts seven, nine and eleven are stricken because of the governmental immunity enjoyed by the board of education in carrying out its duty as an agent of the municipality to control and supervise the schools. The board's motion to strike count twelve is granted because the plaintiff has failed to allege sufficient facts to support a claim of "deliberate indifference."
BY THE COURT
Joseph M. Shortall, J.