## PASQUALE SILANO, SR., ET AL. *v.* BOARD OF EDUCATION OF THE CITY OF BRIDGEPORT ET AL.

Superior Court, Judicial District of Fairfield
File No. CV-99-0367741-S

Memorandum filed April 7, 2010

*Proceedings*

*Laurence V. Parnoff*, for the plaintiffs.

*Peter D. Clark*, for the named defendant et al.

*Office of the city attorney*, for the defendant Alaine Lane.

LEVIN, J. This is an action seeking money damages for personal injuries allegedly sustained by the minor plaintiff, a special education student, at public school or on a school bus.

On October 4, 1999, the plaintiffs, Pasquale Silano, Jr. (Pasquale), and his parents, Pasquale Silano, Sr., and Francine Silano, commenced this action against the defendants, the board of education of the city of Bridgeport (board), James Connelly, Roberto Rodriguez and Alaine Lane.

The plaintiffs filed a ten count amended complaint on December 21, 1999. The first count is against the board and alleges the following facts. At all relevant times, Pasquale was a minor who was learning disabled and educationally mentally retarded. He attended the Bridgeport public schools and was placed in special education and learning disabled classes. In 1996, when he was eleven years old, Pasquale was threatened at school by a nineteen year old wielding a knife. Between 1996 and 1998, Pasquale was continually subjected to harassment, threats, physical assaults and mental abuse and was robbed while at school. School personnel knew or should have known of all of these incidents. These incidents were caused by the board's failure to fulfill its statutory duties to keep students, including Pasquale, safe and to protect them from harm, harassment, threats, violence and assaults, and the board's failure to adequately monitor, supervise and control the behavior of students enrolled in its school system. As a result, Pasquale sustained severe emotional and psychological injuries that rendered him unable to attend school and

required homebound tutoring. In addition, Pasquale suffered further regression and deterioration of his physical, mental and scholastic conditions as well as other damages.

The second count is against Connelly, who was the superintendent of the Bridgeport schools at the time of the alleged incidents. This count incorporates the allegations of the first count and further alleges that Connelly was charged with the duty of overall supervision and control of the school system and the duty to provide a safe environment for students. In addition, the second count alleges that Pasquale's injuries were the result of the negligent and careless failure of Connelly to perform his duties: (a) to provide adequate monitoring, control and supervision of students, principals and teachers in his charge and subject to his observation; (b) to exercise reasonable care in controlling principals, teachers, staff and students so as to prevent students from harming the minor plaintiff; (c) to restrain or control the students, although the defendant knew or should have known the students had a propensity for violence, unruly, undisciplined and criminal activity; (d) to protect the minor plaintiff from the wrongful conduct of other students; (e) to take adequate and necessary precautions to protect the minor learning disabled plaintiff from violent, unruly, disorderly and undisciplined students although the defendant knew or should have known that the minor plaintiff was being continually harassed, threatened and physically assaulted by the students; (f) to undertake necessary and adequate precautions to protect the minor plaintiff when he was vulnerable to harm from students due to his special needs; (g) to employ competent and properly trained administrators, teachers and staff to adequately supervise and protect students; (h) to take reasonably necessary measures to keep Pasquale safe and protected from harassment, threats, violence,

assaults and the infringement of his civil rights; (i) to maintain discipline and order; and (j) to prevent intentional harm to the school children in his care.

The third and fourth counts, which are directed against Rodriguez and Lane, respectively, incorporate the allegations of the first count. Rodriguez was principal of the Waltersville School, which Pasquale is alleged to have attended in 1996 and 1997, and Lane was principal of Benjamin Franklin Educational Center, which Pasquale is alleged to have attended in 1997 and 1998. The plaintiffs further allege that Pasquale's injuries were the result of Rodriguez' and Lane's negligence. The allegations of negligence against Rodriguez and Lane are substantially similar to those asserted against Connelly, except for the allegations regarding Connelly's control and supervision of principals.

In the fifth count, Pasquale's parents incorporate the allegations of the previous counts and further allege that, as a result of the injuries sustained by Pasquale, they have incurred and will incur expenses in the future for the education, psychological and medical care, support and maintenance of Pasquale.

The sixth through tenth counts mirror the allegations of the first through fifth counts, respectively, but allege that the defendants acted recklessly rather than negligently. All counts allege that as a result of the defendants' negligence or recklessness, Pasquale or his parents have incurred and will continue to incur considerable expense for schooling and psychological counseling and that Pasquale has been prevented from pursuing his usual life's activities, including his ability to attend school, and his ability to enjoy life's offerings may be permanently restricted. The plaintiffs seek money damages, attorney's fees and punitive damages.

In their answers and special defenses, all the defendants assert that the plaintiffs' claims are barred by the

statute of limitations and governmental immunity. Prior to trial, summary judgment was granted in favor of Rodriguez.

The case was tried to the court, primarily on documents. Most of the live testimony that was material was provided by the plaintiff Pasquale Silano, Sr.

The court finds the following facts. Pasquale was born to the plaintiffs Pasquale Silano, Sr., and Frances Rita Paternoster, on February 6, 1985. He has a full scale IQ of 57 which, according to the evidence, places him in the moderately retarded range. His father is a meat cutter in a supermarket; his mother is a homemaker who rarely leaves the house. Pasquale is learning disabled and educationally mentally retarded. He is also obese.

Pasquale entered the Bridgeport public school system as a special education student. During the first half of 1996, Pasquale was assigned to what Deborah Fiorillo, his speech/language specialist, described as "a self-contained classroom for children with specific learning disabilities" at the Waltersville School. One of his teachers, Carolyn Rogers, reported on February 23, 1996, that he was "a well mannered young man who appears to have auditory discrimination problems . . . . Pasquale appears to be a loner in the classroom. He keeps to himself until he's told to mingle with peers in activities. His spatial handwriting is almost legible . . . . Pasquale appears to be so confused. Directions must be explained slowly and given with examples."

Contemporaneously, Fiorillo reported that Pasquale had "made a great deal of progress in math and is now functioning at the 3rd grade 5 month level. In reading decoding Pasquale is working at the 1st grade 5 month level and at the 1 month 3 month level." She characterized his progress as "slow and steady . . . ."

On February 13, 1996, the family's attorney, Laurence Parnoff, sent Superintendent Connelly a letter[1] representing: "Over the last two months Pasquale has returned home from school with bruises and injuries as a result of fights occurring at school. As Pasquale is both brought to school and returned home from school by the school bus, his injuries could only have occurred during the school day." Parnoff requested that Connelly take appropriate action and have Pasquale transferred to another location for schooling. Finally, Parnoff requested a Special Education meeting to determine an appropriate educational setting for Pasquale.

On February 28, 1996, Alexander Norwood, the associate superintendent of schools, responded to attorney Parnoff's letter, stating that he "spoke to Roberto Rodriguez, the principal of Waltersville School, and was assured that Pasquale and all children at the school are supervised while being transported to school and while in school. He also informed me that on January 23, and again on January 31, 1996, Pasquale came to school with multiple scratches on his face. Pasquale was questioned on both occasions and informed the principal that he had an altercation at home with his sister and she scratched him. Mr. Rodriguez contacted the father and informed him of this matter. On January 31, Pasquale was seen by the school nurse and the social worker, and a referral was made to the Department of Children and Families."

In March, 1998, the board conducted a psychological study of Pasquale. It reflected that his communication,

---

[1] The defendants objected to the admission of the letter on the basis that it was hearsay. The court agreed. See Conn. Code Evid. §§ 8-1 and 8-2. The court allowed the letter to be marked as a full exhibit but did not admit it for the truth of the matters asserted therein but, rather, as notice to the board and Connelly that the plaintiffs claimed that Pasquale had been assaulted at school or on the bus. See C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 8.8.1.

daily living and socialization skills were "low," and that his full scale IQ was 57. The study reported that Pasquale "has been absent from school for the majority of this school year. Referrals to DCF[2] and for homebound instruction have been made. Reasons given by Pasquale and his parents for this behavior [school avoidance] reach back to past years when he was reportedly in a number of physical altercations. This year at the very outset of school he reportedly was set upon by four older students, was threatened, and subsequently had apparently given up the idea of attending school under such circumstances.[3] This last episode took place while his class was temporarily housed [at the Benjamin Franklin Educational Center]. It was very difficult to have Pasquale attend school even for purposes of this evaluation. His parents were apparently not successful in persuading him [after hours of trying] and only through the personal intervention of the DCF worker did Pasquale grudgingly come to Bryant School for the evaluation sessions. He agreed to participate only if his parents would stay in close proximity to the evaluation site. Pasquale was quite cooperative for the majority of the procedure but refused to participate in academic areas [Reading, Math, Spelling etc.]. His father stated that Pasquale can read only three letter words . . . and arithmetic skills are limited to simple addition and subtraction. The [h]omebound instructor should be contacted to help determine current levels of academic functioning.

"Special education records reveal that a psychological evaluation [March 1, 1995] indicated that cognitive

---

[2] DCF is an acronym for the department of children and families of the state of Connecticut.

[3] The defendants objected to this portion of the study on hearsay grounds. The court sustained the objection and did not admit this portion into evidence for the truth of the matter asserted. See Conn. Code of Evid. §§ 8-1 and 8-2.

functioning was within the [educationally mentally retarded] range of intellectual development."

The same psychological study stated that on the Burks Behavior Rating Scale, "[s]ignificant findings . . . involved such areas as: excessive anxiety, poor impulse control, excessive resistance, excessive dependency, poor ego strength etc. Very significant findings were noted in areas of poor academics and poor anger control." The board placed Pasquale on homebound instruction and assigned him a tutor in March, 1998. By May, 1998, he was doing well with this method of instruction but was still unwilling to go to school. His father wanted him to continue with the tutor at home.

On October 13, 1998, Pasquale and his parents rejected the board's recommendation that he be placed at the Dunbar School, another public school in Bridgeport. Pasquale's educational planning and placement team (PPT) recommended the continuation of homebound instruction until Pasquale was transitioned to the Winthrop School in a self-contained special education class.

On March 5, 1999, Pasquale underwent a psychiatric consultation, which had been arranged by the board. The report that followed stated: "At the very outset of school in 1998, [Pasquale] reportedly was set upon by four older students, was threatened, and robbed of his Nintendo game cartridges. Subsequently he refused to attend school. This episode took place while his class was temporarily housed in another location (Benjamin Franklin Educational Center).

"This has been the last episode in a series of difficulties that Pasquale has been experiencing in school. Due to his learning disability, mental slowness, and large size, Pasquale has been picked on, teased and taken advantage of by his peers. He has no friends, cannot trust his peers, and feels safe only around his parents

and relatives. Because of . . . constant teasing and arguments with schoolmates, Pasquale has been engaging in a lot of fights in the school and on the school bus. On one occasion when he was eleven, [Pasquale] was threatened with a knife by a nineteen year old student. Pasquale's father feels that some of the bullying and fighting has racial undertones. He expresses concern about his son's safety if he is to return to the public school system. According to the father, Pasquale has been exhibiting some avoidant behaviors exemplified by 'ducking' at the [sight] of a school bus, refusing to go near a school building and describes his son as 'traumatized.'

"Both father and son were pleased and comfortable with the home tutor and reported that Pasquale has made significant advances in his academic performance." The psychiatrists recommended continuing Pasquale on homebound instruction and gradually transitioning him to a school setting.

On September 29, 2000, the board convened another PPT meeting at the request of the plaintiffs' attorney. The report of that meeting states:

"Pasquale has not attended school for two years. As reported at previous PPT meetings, Pasquale is fearful of attending school. His father attributes this fear to school incidents that traumatized him. He received homebound instruction during the 1998-99 school year. Several attempts were made to complete academic assessment in preparation for this PPT but parent and student were unavailable.

"Mr. James Shannon reviewed the efforts that have been made to get Pasquale back in school. Mr. Shannon has worked with Pasquale and his family to transition him back to school, made home visits, and offered parenting support. A special education program at Winthrop School has been recommended. Mr. Shannon was

to work with Winthrop staff to support Pasquale in entering. Pasquale never attended. Placement at The University School was approved however Pasquale never attended. A psychiatric consultation was held on March 5, 2000. The report indicates that Pasquale does not present with clinical symptoms of post-traumatic stress, and that homebound instruction has outlived its usefulness. It also indicates that the family seems to be reinforcing his opposition to returning to school. Pasquale's size and temper are factors in this. The recommendations include a timely plan to reenter school and a referral for psychiatric services including possible medication. The psychiatric referral has been sent to Dr. Shaw, the family physician. Mr. Silano expressed difficulties in getting Pasquale to leave the house. He stated that he had to call assistance on one occasion. It was discussed that if necessary Mr. Silano could ask for psychiatric assistance.

"Mr. Silano reviewed Pasquale's reasons for being fearful of school and requested a female tutor. Other members of the team expressed that a more positive action is needed at this time to get Pasquale back in school. A variety of interventions were discussed and a plan was developed. The Winthrop School special education class was recommended. It was made clear that the family will have to make a firm demand that Pasquale go to school. Parent requested support through the school truancy officer, school security and Mr. Shannon.

"The following sequence of steps was proposed by Attorney Parnoff: Attorney Parnoff will go to the Silano home with Mr. Silano and explain the situation to Pasquale and his mother. Mr. Silano requested a letter on Board of Education stationery to show to Pasquale. Mr. Silano plans to take Pasquale to the doctor for medication. A visit to Winthrop School will be arranged. If Pasquale continues to refuse to return to school,

request will be made by parent for a truant officer, a security officer, and Mr. Shannon to go to the house. Mr. Shannon will assist. If all efforts fail to return Pasquale to school, Mr. Silano was advised that he could file a Family with Service Needs petition with Juvenile Court."

Pasquale never returned to school as a result of phobias from which he suffers. Eventually, homebound schooling terminated.

In their posttrial briefs, the remaining defendants argue that (1) they are entitled to governmental immunity, (2) the plaintiffs failed to prove that the defendants were negligent or reckless and (3) the plaintiffs have failed to make out a case of violation of Pasquale's civil rights. The court addresses these defenses seriatim.

I

The defendants first assert that they are entitled to the defense of governmental immunity.

The Supreme Court has made clear that local boards of education, superintendents of schools and school principals are generally immune from liability for their governmental acts. See *Cotto* v. *Board of Education*, 294 Conn. 265, 984 A.2d 58 (2009); *Durrant* v. *Board of Education*, 284 Conn. 91, 931 A.2d 859 (2007). "Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . On the other hand, ministerial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." (Internal quotation marks omitted.) *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 167–68, 544 A.2d 1185 (1988).

Although in *Heigl* v. *Board of Education*, 218 Conn. 1, 8, 587 A.2d 423 (1991), the Supreme Court stated that "[n]either the General Statutes nor our decisional law

has ever stated that a board of education has a specific duty to supervise high school students." This court reads *Purzycki* v. *Fairfield*, 244 Conn. 101, 114, 708 A.2d 937 (1998), as recognizing a duty to supervise elementary students. At all relevant times, Pasquale was an elementary school student. However, it remains the law that "[e]ven if such a duty [to supervise] exists, actions pursuant to such a duty are discretionary if they are performed wholly for the direct benefit of the public . . . . If the duty imposed . . . by the statute is of such a nature that the performance of it will affect an individual in a manner different in kind from the way it affects the public at large, the statute is one which imposes . . . a duty to the individual . . . . If, on the other hand, no one individual is affected . . . in a manner different from other members of the general public . . . [t]he duty imposed [is] . . . public . . . ." (Citations omitted; internal quotation marks omitted.) *Heigl* v. *Board of Education*, supra, 8. In general, "[t]he duty to supervise students is performed for the benefit of the municipality." *Purzycki* v. *Fairfield*, supra, 112. Accordingly, "[i]t cannot reasonably be disputed that the duties of the employees of a board of education, in supervising and disciplining students, are inherently discretionary, involving the use of judgment and the choice between alternative courses of action." *Doe* v. *Board of Education*, Superior Court, judicial district of Hartford, Docket No. CV-03-0824527-S (April 8, 2005) (39 Conn. L. Rptr. 107); see *Romanella* v. *Nielson*, Superior Court, judicial district of New London at Norwich, Docket No. CV-06-5100163-S (May 27, 2009) ("Connecticut law . . . considers the supervision of students a discretionary act"); *Busque* v. *Mansfield*, Superior Court, judicial district of Tolland, Complex Litigation Docket, Docket No. X07-CV-99-0068698-S (October 15, 2001) ("[t]he supervision of students and the manner in which it is done is a discretionary act requiring the

exercise of judgment"). Accordingly, the defendants are entitled to governmental immunity unless the plaintiff has proved that an exception to that doctrine applies.

In further addressing the defendants' defense of governmental immunity, it is helpful to observe that the harassment of which the plaintiffs complain may be divided into three categories: (1) harassment on the school bus, (2) the assault on the plaintiff by older boys at the beginning of the 1997-1998 school year, and (3) harassment generally.

## A

The court addresses the plaintiffs' claim that Pasquale suffered harassment on the school bus. At the time of the acts complained of, General Statutes (Rev. to 1995) § 52-557 provided: "In any action brought by any person for personal injuries received while being transported to or from school in a vehicle owned, leased or hired by, or operated under contract with, any town, school district or other municipality, it shall be no defense that such transportation is in the line of governmental duty. In any such action brought against any town, school district or other municipality, it shall be no defense that the transportation was being provided by an independent contractor."[4]

---

[4] General Statutes § 52-557 was amended in 2000 to add the words "or is mandated by the state" after the words "governmental duty" at the end of the first sentence of the statute, and to add the phrase "the defense of sovereign immunity shall not be available and" after the word "municipality" in the final sentence. See Public Acts 2000, No. 00-133. As reflected in its legislative history; 43 H.R. Proc., Pt. 10, 2000 Sess., pp. 3135–36, remarks of Representative Michael Lawlor; the purpose of the amendment was to legislatively overrule the portion of *Todd M.* v. *Richard L.*, 44 Conn. Sup. 527, 538–41, 696 A.2d 1063 (1995), that held that sovereign immunity was a defense to a special education student's claim that he was sexually victimized on a bus as a result of the negligence of a board of education, its director of transportation and its employee bus driver "in the provision, selection and conduct of [the minor plaintiff's] transportation." Id., 528; see also *M.H.* v. *Board of Education*, 169 F. Sup. 2d 21, 38 (D. Conn. 2001) (upholding defense of sovereign immunity against allegations of assault, infliction of emotional distress and negligence stemming from defendants

The defendants do not address the plaintiffs' argument that § 52-557 eliminates the defense of governmental immunity for personal injuries received while being transported in a school bus.

Whether § 52-557 applies to the facts of this case is a question of statutory interpretation. *Gagne* v. *Vaccaro*, 118 Conn. App. 367, 369, 984 A.2d 1084 (2009). "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is

---

providing special education services); but see *Doe* v. *Klingberg Family Centers, Inc.*, Superior Court, judicial district of New Britain, Docket No. CV-00-0504520-S (August 15, 2001) (30 Conn. L. Rptr. 256, 257–59). This purpose—abrogating sovereign immunity for injuries sustained on a school bus—was noted in *Nisinzweig* v. *Kurien*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X05-CV-96-0150688-S (August 21, 2001) (30 Conn. L. Rptr. 342, 352).

The members of the House of Representatives were in disagreement as to whether the amendment was clarifying legislation; 43 H.R. Proc., supra, pp. 3136–39; an issue affecting whether the amendment applies retroactively. See *Andersen Consulting, LLP* v. *Gavin*, 255 Conn. 498, 517, 767 A.2d 692 (2001). The court need not address that issue since the defendants have not raised the issue of sovereign immunity.

not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Citation omitted; internal quotation marks omitted.) *Derrane* v. *Hartford*, 295 Conn. 35, 42–43, 988 A.2d 297 (2010).

In *Todd M.* v. *Richard L.*, 44 Conn. Sup. 527, 529, 696 A.2d 1063 (1995), the defendant pleaded governmental immunity as a special defense to the minor plaintiff's claim that he was injured on a school bus. In granting the plaintiff's motion to strike that special defense, the court stated that § 52-557 "explicitly eliminates the defense relied on by the defendants . . . ." Id., 537. In the absence of any other explanation by the defendants, the court agrees with the plaintiffs and with the court in *Todd M.* that the plain and unambiguous meaning of § 52-557 is to eliminate the defense of governmental immunity for personal injuries received on a school bus.[5]

Because governmental immunity is unavailable as a defense to the plaintiffs' claim that Pasquale suffered

[5] General Statutes § 52-557 was originally enacted in 1929. See Public Acts 1929, c. 38, codified as General Statutes (1930 Rev.) § 5989; *Nisinzweig* v. *Kurien*, Superior Court, judicial district of Stamford-Norwalk, Complex Litigation Docket, Docket No. X05-CV-96-0150688-S (August 21, 2001) (30 Conn. L. Rptr. 342, 351–52). At that time, fright and nervous shock were not compensable in a civil action without proof of a contemporaneous injury of a traumatic nature. See discussion in *Orlo* v. *Connecticut Co.*, 128 Conn. 231, 234, 21 A.2d 402 (1941); cf. *Linnane* v. *Aetna Brewing Co.*, 91 Conn. 158, 99 A. 507 (1916) (holding that such injuries were then not compensable even under Workman's Compensation Act). The rule was changed in *Orlo* and was thoroughly discarded in *Montinieri* v. *Southern New England Telephone Co.*, 175 Conn. 337, 345, 398 A.2d 1180 (1978). There is no evidence of Pasquale sustaining a traumatic injury on the bus. However, since the defendants do not argue that the definition of personal injury at the time of the enactment of § 52-557 informs its interpretation today, the court does not consider that issue.

harassment on the school bus, the court addresses the merits of that claim below in part II of this memorandum.

### B

Another category of injury to the plaintiff was the alleged assault on him by four older boys at the beginning of the 1997-1998 school year "while his class was temporarily housed in another location . . . ." Evidence as to this incident was not considered for the truth of the matters asserted; the court sustained the defendants' objection on hearsay grounds.[6] There was insufficient evidence to establish that this assault actually occurred. Accordingly, the court need not determine whether governmental immunity would apply had this alleged assault been proven.

### C

The third category is the generalized harassment of the plaintiff at school. As stated previously, because the duties that the defendants are alleged to have breached are discretionary in nature, the defendants are protected by governmental immunity unless a recognized exception applies.

"There are three exceptions to discretionary act immunity. Each of these exceptions represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal

---

[6] See footnotes 1 and 3 of this memorandum. Even if the court were in error in not permitting the plaintiffs to admit these documents into evidence for the truth of the matters asserted in them, the incident would be governed by *Doe* v. *Board of Education*, 76 Conn. App. 296, 819 A.2d 289 (2003), discussed infra, and, therefore, subject to the defense of governmental immunity. Moreover, there is no evidence that the defendant Lane, who was principal of the Benjamin Franklin Educational Center, which Pasquale attended during the 1997-1998 school year, or the defendant Connelly, was negligent with reference to this incident.

officers to exercise judgment—has no force. . . . First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure. . . . Second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws. . . . Third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Internal quotation marks omitted.) *Swanson* v. *Groton*, 116 Conn. App. 849, 859, 977 A.2d 738 (2009).

The plaintiffs claim that the third exception applies here. "The identifiable person-imminent harm exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state. . . . The exception applies when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm. . . . By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. . . . [T]he failure to establish any one of the three prongs precludes the application of the identifiable person-imminent harm exception . . . ." (Internal quotation marks omitted.) Id., 859–60; see *Cotto* v. *Board of Education*, supra, 294 Conn. 273.

With respect to the "identifiable victim" requirement, the Supreme Court has held that "schoolchildren who are statutorily compelled to attend school, during school hours on school days, can be an identifiable class of victims." *Purzycki* v. *Fairfield*, supra, 244 Conn. 109. The court therefore turns to the first requirement of

this exception that the plaintiffs prove that Pasquale was exposed to "imminent harm."

"For the harm to be deemed imminent, the potential for harm must be sufficiently immediate. In fact, the criteria of identifiable person and imminent harm must be evaluated with reference to each other. An allegedly identifiable person must be identifiable as a potential victim of a specific imminent harm. Likewise, the alleged imminent harm must be imminent in terms of its impact on a specific identifiable person." (Internal quotation marks omitted.) *Cotto* v. *Board of Education*, supra, 294 Conn. 276.

The Supreme Court's decision in *Evon* v. *Andrews*, 211 Conn. 501, 559 A.2d 1131 (1989), provides a helpful starting point for understanding later cases applying the imminent harm requirement in the school setting.

"In *Evon* v. *Andrews*, supra, 211 Conn. 502, the plaintiffs' decedents were killed by a fire in the apartment building in which they resided. The plaintiffs brought an action against the municipality and its agents for failing to enforce various statutes, regulations and codes governing the maintenance of rental dwellings. Id. The trial court granted the defendants' motion to strike the complaint and rendered judgment in favor of the defendants. Id., 502–504. Affirming the judgment, the Supreme Court addressed the applicability of the identifiable person-imminent harm exception, stating: 'The gravamen of the plaintiffs' allegations is that the defendants had not done enough to prevent the occurrence of a fire. The risk of fire implicates a wide range of factors that can occur, if at all, at some unspecified time in the future. . . . In the present instance, the fire *could have occurred at any future time or not at all.* We cannot accept the proposition that the plaintiffs' decedents in this case were readily identifiable victims subject to imminent harm.' [Id., 507–508]." (Citations

omitted; emphasis added.) *Doe* v. *Board of Education*, 76 Conn. App. 296, 302–303, 819 A.2d 289 (2003).

"*Burns* v. *Board of Education*, [228 Conn. 640, 638 A.2d 1 (1994)], is the leading case on the application of the identifiable person, imminent harm exception in the public school context. In that case, [the Supreme Court] concluded that a high school student who was injured in a fall on a sheet of ice in the school courtyard was an identifiable person subject to imminent harm, and emphasized that he slipped and fell due to icy conditions on a main accessway of the school campus, during school hours, while the child was compelled by statute to be on those school grounds. . . . [T]his accident could not have occurred at any time in the future; rather, the danger was limited to the duration of the temporary icy condition in this particularly treacherous area of the campus. Further, the potential for harm from a fall on ice was significant and foreseeable. . . . [The court] therefore determined that the plaintiff school child was one of a class of foreseeable victims to whom the superintendent owed a duty of protection in relation to the maintenance and safety of the school grounds, and accordingly governmental immunity [was] no defense." (Citation omitted; internal quotation marks omitted.) *Grady* v. *Somers*, 294 Conn. 324, 352 n.29, 984 A.2d 684 (2009).

"In *Purzycki* v. *Fairfield*, supra, 244 Conn. 103–104, the minor plaintiff suffered injuries when he was tripped by another student in an unmonitored school hallway. . . . The court concluded that the limited time period and limited geographical area, namely, the one-half hour interval when second grade students were dismissed from the lunchroom to traverse an unsupervised hallway on their way to recess constituted sufficient evidence for a jury to find imminent harm. Id.,

110." (Citation omitted; internal quotation marks omitted.) *Durrant* v. *Board of Education,* supra, 284 Conn. 102.

In *Colon* v. *Board of Education,* 60 Conn. App. 178, 179, 758 A.2d 900, cert. denied, 255 Conn. 908, 763 A.2d 1034 (2000), the plaintiffs brought an action alleging that the minor plaintiff was injured by a door that was swung open by a teacher. The trial court granted summary judgment in favor of the defendant board of education on the ground of governmental immunity. Id. The Appellate Court reversed, stating: "[W]e conclude that Colon was subject to danger that was limited in duration and that the potential for harm was significant and foreseeable. Colon was a student required by statute to be in school. It is alleged that [the teacher] opened a door in a negligent manner causing Colon, a student, to be injured. The danger presented was limited in duration, as it could happen only when students are in the hallway in a dangerous spot. Moreover, the potential for injury from being hit by an opening door is significant. Accordingly, we conclude that governmental immunity does not apply to the present case because the identifiable person-imminent harm exception is applicable." Id., 187–88.

The Appellate Court, in *Doe* v. *Board of Education,* supra, 76 Conn. App. 296, reached a different conclusion. In that case, the plaintiff filed a complaint against the New Haven board of education alleging the following facts: "[T]he plaintiff was a twelve year old student at a school operated by the defendant. . . . [T]he plaintiff traveled to her home room to get her lunch money. While in the room, she was accosted and sexually assaulted by three male students. None of the students involved, including the plaintiff, had a pass to be present in the halls or in that room. The plaintiff managed to fight her way free of her attackers. School officials later found the plaintiff wandering the hallways without her

shoes on." Id., 297. The plaintiff further alleged that the defendant failed to provide a safe and secure educational environment for students because, inter alia, it failed to provide adequate supervision. Id.

The defendant in *Doe* filed a motion to strike the complaint on the basis of governmental immunity. The trial court granted the motion, and the plaintiff appealed. Id., 298. The Appellate Court affirmed, observing that in those cases where appellate courts had found imminent harm to schoolchildren, "the dangerous condition was sufficiently limited both in duration and in geography to make it apparent to the defendants that schoolchildren were subject to imminent harm." Id., 303. The court held that in the case before it, "the plaintiffs have not alleged facts showing that the danger to students was limited in duration and geography." Id., 304.

Here, we are dealing not with the adequacy of pleadings, as in *Doe*, but with proof. While it is the defendant's burden to prove the defense of governmental immunity; see *Herasimovich* v. *National Railroad Passenger Corp.*, Superior Court, judicial district of New Haven, Docket No. 321550 (October 21, 1992) (7 Conn. L. Rptr. 482); *Santiago* v. *New Britain*, 42 Conn. Sup. 22, 25, 598 A.2d 373 (1991); it is the plaintiff's burden to prove an exception to that defense. See *Cotto* v. *Board of Education*, supra, 294 Conn. 273; *Romano* v. *Derby*, 42 Conn. App. 624, 627, 681 A.2d 387 (1996); see also *Seri* v. *Newtown*, 573 F. Sup. 2d 661, 672, 674 (D. Conn. 2008) (granting defendant's motion for summary judgment where plaintiff "ha[d] not demonstrated, for any of his direct claims of negligence against [the town of] Newtown, how . . . he was subject to imminent harm"), aff'd sub nom. *Seri* v. *Bochicchio*, 374 Fed. Appx. 114 (2d Cir. 2010); *Wilson* v. *Norwich*, 507 F. Sup. 2d 199, 212 (D. Conn. 2007); *Ejchorszt* v. *Daigle*, United States

District Court, Docket No. 3:02cv01350 (CFD) (D. Conn. March 21, 2007).

The plaintiffs' claim of generalized harassment of Pasquale in school is necessarily unlimited as to duration if not geography. As in *Doe* v. *Board of Education*, supra, 76 Conn. App. 296, and *Evon* v. *Andrews*, supra, 211 Conn. 501, the harm alleged could have occurred at any future time or not at all, and therefore does not come within the imminent harm-identifiable person exception to governmental immunity.[7] Accordingly, the court finds that the defendants are entitled to governmental immunity except for the harassment of Pasquale on the school bus.

## II

Although the defense of governmental immunity does not apply to the harassment of Pasquale while he was on the school bus, the plaintiffs must still prove the elements of a negligence action. Cf. *Monk* v. *Temple George Associates, LLC*, 273 Conn. 108, 118, 869 A.2d 179 (2005) ("[i]mposing a duty of care is not . . . tantamount to imposing strict liability . . . because plaintiffs alleging negligence would still have to prove a

---

[7] The court has considered the plaintiffs' claim that Pasquale was, in effect, constantly subjected to imminent harm in school. Factual support for this claim may be found in the written report of the psychiatric consultation Pasquale underwent on March 5, 1999. The difficulty with making a factual finding in the plaintiff's favor on this claim lies with the quality of the evidence. The information as reported by the evaluator is, at the very least, secondhand information. Although this does not necessarily render it unworthy of belief, the information is conclusory, the source is unclear, the subordinate factual foundation is undisclosed, and whether the information was accurately transmitted and recorded is unknown. This evidence is particularly unsatisfying in the context of the harm allegedly visited on Pasquale, teasing and bullying, a type of harm less tangible than physical assault (though no less real to the victim). As discussed in part II of this opinion, more should have been attempted to adduce admissible and persuasive evidence. However, even if the teasing and bullying were as constant as the plaintiffs claim, there is no evidence of negligence by any of the defendants. Their solution, home schooling of Pasquale, was a reasonable solution for a difficult problem.

breach of reasonable care in addition to causation"). "The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *Jagger* v. *Mohawk Mountain Ski Area, Inc.*, 269 Conn. 672, 687 n.13, 849 A.2d 813 (2004).

"There is a difference between the existence of a duty and a violation of that duty." *Tryon* v. *North Branford*, 58 Conn. App. 702, 715, 755 A.2d 317 (2000). The defendants undoubtedly had a common-law duty of care as to Pasquale. Moreover, § 10-76d-19 of the Regulations of Connecticut State Agencies provides in relevant part: "Each board of education shall provide, as a related service, safe and appropriate transportation as required to implement the individualized education program for each child requiring special education and related services."[8]

Whether a duty has been breached is question of fact. *Tryon* v. *North Branford*, supra, 58 Conn. App. 716. The plaintiffs have failed to prove that fact. First, there was no testimony from anyone with personal knowledge of the harassment. Second, while hearsay evidence admitted without objection can be "a sufficient basis for a finding of fact"; *DeGroat* v. *DeGroat*, 171 Conn. 363, 363, 370 A.2d 963 (1976); the hearsay here is conclusory. There is no evidence of facts or circumstances fleshing out what happened. "Negligence consists in a failure to exercise due care . . . ." *Beckwith* v. *Stratford*, 129 Conn. 506, 511, 29 A.2d 775 (1942). "The question of due care in such situations *depends upon the circumstances* of each case." (Emphasis added.)

---

[8] "[H]owever," as one court has cautioned, "school districts and their employees do not owe an absolute duty of supervision to students. Thus, the duty of supervision is limited both by statute and by the common law, which requires schools to protect students only from foreseeable risks, and only to the extent necessary to carry out their educational purpose." *Edson* v. *Barre Supervisory Union #61*, 182 Vt. 157, 161, 933 A.2d 200 (2007).

*O'Connor* v. *Connecticut Railway & Lighting Co.*, 82 Conn. 170, 173, 72 A. 934 (1909); see *O'Briskie* v. *Berry*, 95 Conn. App. 300, 313–14, 897 A.2d 605 (2006). "A plaintiff must remove the issues of negligence and proximate cause from the field of conjecture and speculation." (Internal quotation marks omitted.) *Hicks* v. *State*, 287 Conn. 421, 438, 948 A.2d 982 (2008). "Inferences to be drawn from the facts proved must be reasonable and logical, and the conclusions based on them must not be the result of speculation and conjecture." *Palmieri* v. *Macero*, 146 Conn. 705, 708, 155 A.2d 750 (1959). Negligence cannot be presumed from the mere happening of an untoward or even tragic incident. See *Wu* v. *Fairfield*, 204 Conn. 435, 440, 528 A.2d 364 (1987); *O'Brien* v. *Cordova*, 171 Conn. 303, 306, 370 A.2d 933 (1976).

The plaintiffs contend that "the factual basis for the Plaintiffs' claims can only be learned from the testimony of Pasquale, a special needs child, mentally retarded and with speech and language impairments and from the circumstantial evidence gleaned from the express and implied content of the Defendants' records." Plaintiffs' Posttrial Reply Brief, Dec. 25, 2009, p. 6. This is not so. Chapter 13 of the Practice Book provides for a variety of devices—interrogatories, requests for production, requests for admission, and depositions—by which a party may discover "information . . . within the knowledge, possession or power of the party or person to whom the discovery is addressed." Practice Book § 13-2. Given the breadth of modern discovery, it is not unusual for a party having virtually no personal knowledge of the material facts to prove his case. Here, it appears that, of the various discovery vehicles available, the plaintiffs availed themselves only of requests for production. No depositions, other than of Pasquale, were taken.

The court finds that the plaintiffs have failed to prove that the defendants were negligent or reckless.

### III

The plaintiffs claim that the defendants violated their civil rights. Paragraph 14 of the first count of the amended complaint alleges in relevant part: "The harassment, threats, abuse and assaults suffered by [Pasquale], and his resulting injuries and damages, were caused by the Board's negligent control over Bridgeport's public schools including its negligent: a. failure to keep [Pasquale] safe, and protected from harm, harassment, threats violence, assaults and the infringement of his civil rights . . . ."

Paragraph 14 of the second count alleges in relevant part: "The plaintiff [Pasquale] was subject to continual harassment, threats and physical and mental abuse and assaults as a result of the negligent and careless failure of defendant Connelly . . . (h) To take reasonably necessary measures to keep [Pasquale] safe, and protected from harassment, threats, violence, assaults and the infringements of his civil rights . . . ." Paragraph 14 of the Fourth Count contains the same allegations except that the name of the defendant Alaine Lane is substituted for the defendant Connelly.

Paragraph 14 of the seventh count alleges in relevant part: "The plaintiff [Pasquale] was subject to continual harassment, threats and physical assaults as a result of the defendant Connelly's bad faith, reckless, wilful and wanton conduct, which he knew, or in the exercise of due diligence should have known, would cause further injury and damage to [Pasquale's] already fragile condition and which was reasonably certain to follow from his failure . . . (h) To take adequate and necessary measures to keep [Pasquale] safe, and protected from harm, harassment, threats, violence, assaults and the infringements of his civil rights. . . ." Paragraph 14 of

the ninth count contains the same allegations, except that the name of the defendant Alaine Lane is substituted for that of the defendant Connelly. This is the extent to which the plaintiffs have alleged a violation of Pasquale's civil rights.

In their posttrial brief, the plaintiffs cite two cases in support of their civil rights claim, *Horton* v. *Meskill*, 172 Conn. 615, 376 A.2d 359 (1977), and *Horton* v. *Meskill*, 195 Conn. 24, 486 A.2d 1099 (1985), cases which challenged the state's system of financing elementary and secondary public education as a denial of equal protection. The court finds the equal protection claim inadequately briefed. See Practice Book §§ 5-1 and 5-2.

The plaintiffs argue: "Presumably each of the Defendants, for all of its other Special Education Students, provided: adequate security; carried out through its personnel its own recommendations for an appropriate education; prevented assaults and harassment; did regular, annual PPTs, IEPs testing and progress reports; and carried out the recommendations of its expert psychologists and psychiatrists. None of which it did for Pasquale.

"Instead, after notice, [the defendants] intentionally transferred Pasquale back into a placement that was unsafe and both inadequate to meet his known special needs and contrary to the recommendations of its experts. And it so acted when it knew, or should have known, that such transfer violated Pasquale's civil rights and would cause him injury, given his fragile nature." (Plaintiffs' Posttrial Brief, Nov. 16, 2009, pp. 13–14.) Thus, the specific civil right that the plaintiffs claim the defendants denied was Pasquale's right to equal protection of the laws.

"The [e]qual [p]rotection [c]lause of the [f]ourteenth [a]mendment to the United States [c]onstitution is essentially a direction that all persons similarly situated should be treated alike. . . . *Zahra* v. *Southold*, 48 F.3d

674, 683 (2d Cir. 1995). In *LeClair* [v. *Saunders*, 627 F.2d 606 (2d Cir. 1980), cert. denied, 450 U.S. 959, 101 S. Ct. 1418, 67 L. Ed. 2d 383 (1981)], the Second Circuit stated that a violation of equal protection by selective treatment arises if: (1) the person, compared with others similarly situated, was selectively treated; and (2) . . . such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. [Id., 609–10]. [When a plaintiff] does not allege selective treatment based upon his race, religion, or any intentional effort by [the] defendants to punish him for exercising his constitutional rights, [the plaintiff] must demonstrate that [the] defendants maliciously singled [him] out . . . with the intent to injure him. *Crowley* v. *Courville*, 76 F.3d 47, 52–53 (2d Cir. 1996); see also *Thomas* v. *West Haven*, [249 Conn. 385, 393, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S.Ct. 1239, 146 L. Ed. 2d 99 (2000)]." (Internal quotation marks omitted.) *Honulik* v. *Greenwich*, 293 Conn. 698, 725, 980 A.2d 880 (2009).

The plaintiffs have proved none of these facts. Specifically, they have not proved that Pasquale was selectively treated based on impermissible considerations, that the defendants harbored a malicious or bad faith intent to injure Pasquale, or that they maliciously singled him out with the intent to injure him. Specifically, the plaintiffs have not proved that Pasquale was treated differently from other special education students similarly situated nor that the defendants selected a particular course of action in part because of its adverse effects upon Pasquale. Rather, the defendants acted in good faith in the face of difficult circumstances. Assuming that the plaintiffs have adequately pleaded and briefed a civil rights claim, the plaintiffs have failed to prove that the defendants violated their civil rights.

Judgment may enter for the defendants.